A96A0808. WALKER v. THE STATE.
(476 SE2d 801)

BEASLEY, Chief Judge.

Walker was convicted of the attempted murder of the Sheriff of Treutlen County. OCGA § 16-5-1. He appeals the denial of his motion for new trial, claiming ineffective assistance of counsel.

Prior to trial, Walker sought a change of venue based on adverse pretrial publicity and the fact that the victim of the alleged crime was a well-known and popular political figure in the small rural community. When the trial began, defense counsel asked the court to defer ruling on the motion until after voir dire examination of prospective jurors. During voir dire, counsel engaged in cursory questioning of the panel concerning whether they had heard anything about the case and formed an opinion of Walker's guilt as a result. He did not ask any questions concerning their knowledge of or relationship with the sheriff.

Following voir dire, the motion for change of venue was not renewed. After the jury was selected, a juror asked to be excused for medical and employment reasons. She stated she did not think she would be put on the jury because of her friendship with Walker's family as well as the sheriff. By agreement of counsel, the alternate was substituted, another alternate was selected, and the juror was excused.

The evidence introduced by the State at trial showed that Walker offered to pay Smith to kill the sheriff. Smith informed the sheriff and a GBI investigator of this but refused to participate in any investigation. After another individual came forward with similar information, federal agent Bisnette was brought in to undertake an undercover investigation of Walker.

Bisnette was introduced to Walker on January 6, 1993, as a landscaper who had been discharged from the military for smuggling weapons. Bisnette testified that they did not discuss anything of significance during their first two meetings. Beginning with their third meeting on January 21, Bisnette began recording each conversation. During this meeting, Walker began to talk about guns and silencers, and he discussed a grudge he had against the sheriff arising from a dispute between Walker and the sheriff's cousin.

After the January 21 meeting, Bisnette met with Walker again on January 27 and February 3, 10, 17, and 18. The tape recordings and transcripts of the January 21 and 27 meetings, and of the February 3, 10, and 17 meetings, were admitted in evidence. Bisnette read portions of each transcript to the jury. The tape recording of the February 18 meeting was admitted in evidence and played.

During the fourth meeting, on January 27, a prearranged traffic stop took place during which the sheriff gave Bisnette a speeding ticket. Afterward, Walker told Bisnette there was a drug dealer in Vidalia who was willing to pay $100,000 to have the sheriff killed. Walker said he did not know where the drug dealer was, and Bisnette asked Walker to find him. Bisnette also asked Walker if he could get some silencers, and Walker said he would try. They discussed the sheriff's dogs, because of the possibility that such dogs would inter-

fere with someone trying to kill the sheriff.

At their February 3 meeting, Bisnette and Walker discussed at length the killing of the sheriff. Walker suggested two methods, but Bisnette persuaded Walker to pursue a different method to ensure the sheriff's safety. The latter method involved Walker driving Bisnette to the vicinity of the sheriff's house, Walker going to a convenience store and telephoning the sheriff so as to lure him out of his house, and Bisnette shooting him.

During their next meeting on February 10, Walker and Bisnette talked further about the killing and engaged in a reconnaissance of the area where the sheriff lived. Walker provided Bisnette with a weapon and two silencers and asked Bisnette if he could obtain a bazooka or grenade launcher in order to shoot the sheriff's house. When Bisnette asked if he would do this while the sheriff's wife and child were home, Walker said he would.

On February 17, Bisnette told Walker he had poisoned the sheriff's dogs, which were actually removed to a kennel. Walker provided Bisnette with a map, they engaged in further reconnaissance of the area surrounding the sheriff's residence, and they practiced the movements they would make when the killing took place.

Bisnette next met Walker at a truck stop in the early morning hours of February 18. Walker, driving a borrowed vehicle, went to an area close to his own residence and retrieved a silencer. He then drove Bisnette to the vicinity of the sheriff's house. Walker went to the convenience store and telephoned the sheriff, attempting to lure him out of his house to another location. Walker was arrested immediately after the call. A recording of the conversation was played to the jury.

In the motion for new trial, Walker complained of counsel's failure to question prospective jurors concerning their knowledge of or relationship with the sheriff. He also complained of counsel's failure to renew the motion for change of venue after voir dire.

Counsel testified at the extensive hearing on Walker's motion that he did not question prospective jurors about their knowledge of or relationship with the sheriff, because he assumed that all prospective jurors in the small community knew him. He also testified that, prior to trial, the defense had obtained a list of prospective jurors, investigated them, and determined which ones were acceptable. Counsel's investigator, who is also Walker's brother, testified that he was not asked to, and did not, go out and investigate the list of prospective jurors. According to the investigator, counsel solicited his opinion of the people on the list, and he told counsel he only knew some of them. The investigator testified he advised counsel to seek a change of venue because 80 percent of the people in the county voted for the sheriff. Counsel testified he did not move for a change of

venue after voir dire because he and Walker decided that Walker would do as well being tried in Treutlen County as in surrounding counties. This testimony was not contradicted by Walker.

Walker's motion for new trial was denied by the trial court on the ground that he had not carried his burden of showing that any deficient performance by counsel prejudiced his defense by creating "a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional deficiencies." *Waddell v. State*, 190 Ga. App. 499 (1) (379 SE2d 592) (1989); see *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). For reasons which follow, we must uphold the trial court's rejection of Walker's ineffective assistance claim, as its finding is not clearly erroneous. *Warren v. State*, 197 Ga. App. 23, 24 (1) (397 SE2d 484) (1990).

First, following voir dire, Walker concurred in the decision not to seek a change of venue. See *Johnson v. State*, 214 Ga. App. 77 (1) (447 SE2d 74) (1994). Moreover, Walker has made no showing that the jury in this case was in fact not impartial. Compare *Watkins v. State*, 237 Ga. 678 (229 SE2d 465) (1976), in which the defendant proved by juror affidavits that a fair trial was not had.

Second, at trial, Walker's defense was entrapment. "[T]he entrapment defense consists of three elements: ' "(1) The idea for the commission of the crime must originate with the state agent; (2) the crime must be induced by the agent's undue persuasion, incitement, or deceit; and (3) the defendant must not be predisposed to commit the crime. (Cits.)" (Cit.)' [Cit.]" *Gibson v. State*, 212 Ga. App. 301, 302 (441 SE2d 803) (1994). " 'There is no entrapment where the agent merely furnishes an opportunity to a defendant who is ready to commit the offense. . . .' [Cits.]" *Byrd v. State*, 211 Ga. App. 881 (1) (440 SE2d 764) (1994).

The evidence showed that the idea for the commission of the crime originated with Walker before he ever met Bisnette. The transcripts and tape recording of the conversations between Walker and Bisnette wholly cancel any suggestion that the crime was induced by undue persuasion, incitement, or deceit by Bisnette, or that Walker was not predisposed to commit the crime. The defense made no showing that the tapes and transcripts of Walker and Bisnette's meetings did not accurately reflect their conversations or that Bisnette somehow managed to entrap Walker during meetings that were not recorded. Bisnette merely furnished Walker an opportunity to kill the sheriff, and Walker eagerly pursued that opportunity because of numerous grudges Walker had against the sheriff. Based on the evidence introduced at trial, there is no reasonable probability that Walker would have been acquitted by any other jury. *Johnson v. State*, supra at 78.

*Judgment affirmed. Birdsong, P. J., and Senior Appellate Judge*

*Harold R. Banke concur.*

DECIDED SEPTEMBER 30, 1996.

Joe H. Thalgott, for appellant.
Ralph M. Walke, District Attorney, Jeffrey J. Connor, Assistant District Attorney, for appellee.