## A00A1532. BOLICK v. THE STATE.
### (536 SE2d 242)

ELDRIDGE, Judge.

Michael Jason Bolick appeals pro se from the denial of his motion for new trial, which followed his May 1998 convictions for burglary, kidnapping, kidnapping with bodily injury, false imprison-

ment, robbery, aggravated battery, and aggravated assault.[1] In a comprehensive order, the trial court specifically considered and rejected each of the errors enumerated in Bolick's motion for new trial. On appeal, without challenging the sufficiency of the evidence presented, Bolick raises the same enumerations of error. As the trial court's conclusions were supported by the record and the applicable law, we affirm.

The relevant facts, viewed in the light most favorable to the jury's verdict,[2] are as follows: On November 12, 1997, Bolick went to the victim's home in Cartersville, Bartow County. He had previously done some repair work on her home, and she recognized him from those encounters. Bolick went to the victim's home with the intention of robbing her so that he could get money for drugs. However, he pretended to be interested in puppies that the victim previously had offered to him. The victim had no more puppies available but offered to call Bolick if another dog became available. After the victim thought Bolick had left, he rang her doorbell again, supposedly to give her a phone number where he could be reached. While she wrote down the number, Bolick suddenly grabbed the victim around the neck from behind. He bound her hands behind her back with two sets of handcuffs; during his brief absence, he had retrieved the handcuffs from his truck. Bolick choked her and dragged her through the house to the bedroom. Bolick "threw" the victim on the bed and "ripped" her jeans and boots off.

The victim told Bolick that her mother-in-law was going to arrive at any time. Bolick threw the victim to the floor and "hog-tied" her. He dumped the victim's purse onto the floor and forced her to find her checkbook and license.[3] Bolick then dragged the victim to the bedroom closet and left in his truck with some of the victim's cash. The victim was able to untie her feet and escaped out a bathroom door.

During the assault, however, Bolick caused the victim to suffer multiple injuries, including a lacerated and broken nose, a fractured eye socket, and severe swelling and bruising of her face and neck. The victim's treating physician testified that her injuries were not consistent with those suffered when one simply falls down but were the type seen when someone is:

in a car wreck or they have a high-speed or even a medium-speed impact into a steering wheel or dashboard, some peo-

---

[1] Some of the convictions were merged for sentencing purposes.

[2] *Kapua v. State*, 228 Ga. App. 193, 195 (491 SE2d 387) (1997).

[3] The checkbook and license were found on November 14, 1997, by a postman in a box of mail in Cartersville, Georgia.

ple who get hit real hard with a baseball or a baseball bat or get in a fight, fall off a roof or a ladder or whatever. It's what we call more of an accelerated injury, because those bones don't, especially the eye socket, don't break very easily.

The victim also suffered lacerations from the handcuffs, which resulted in permanent scars on her wrists and forearms.

1. In his first enumeration, Bolick asserts that he was denied the effective assistance of trial counsel.

> To establish ineffectiveness of trial counsel under *Strickland v. Washington*, 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984), [Bolick] must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. Unless a defendant makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable. In addition, there is a strong presumption that trial counsel's performance falls within the wide range of reasonable professional assistance and that any challenged action might be considered sound trial strategy. In the absence of testimony to the contrary, counsel's actions are presumed strategic. The trial court's determination that an accused has not been denied effective assistance of counsel will be affirmed on appeal unless that determination is clearly erroneous.

(Citation and punctuation omitted.) *Hamilton v. State*, 238 Ga. App. 320, 322 (3) (517 SE2d 118) (1999).

(a) Bolick alleges that his trial counsel failed to interview two relatives who expressed interest in serving as character witnesses. It is undisputed that neither witness had any firsthand knowledge about the crimes at issue herein. Although counsel did not recall whether he and Bolick specifically discussed the use of character witnesses, counsel testified that he would have advised against presenting witnesses to testify solely of Bolick's good character. Counsel expressed his concern about opening the door to allow the prosecution to introduce evidence of Bolick's previous criminal convictions, including burglaries and forgeries, which "we certainly did not want the jury to know about." Bolick's father admitted that counsel had recommended against the use of character witnesses for this reason.

> The decisions on which witnesses to call, whether and how to conduct cross-examination, which jurors to accept or strike, what trial motions should be made, and all other strategic and tactical decisions are the exclusive province of

the lawyer after consultation with his client. Trial counsel's strategic decisions made after thorough investigation are virtually unchallengeable.

(Citations omitted.) *Teat v. State*, 237 Ga. App. 867, 869 (2) (516 SE2d 794) (1999). After hearing counsel's testimony, the trial court determined that counsel's decision regarding these character witnesses was "a strategic determination which falls well within [the] realm of 'reasonably effective assistance.'" See id.; *Strickland v. Washington*, supra. The record supports this finding.

(b) Bolick also claims that counsel was ineffective for failing to file pre-trial discovery motions. This enumeration lacks merit. Counsel testified that he did not file such motions because the district attorney maintains an "open file policy; and so by not electing or opting into formal discovery, we had the ability to go through the state's file and then read everything contained in the file." As such, the trial court's determination that counsel was not ineffective due to this strategic decision is supported by the record.

(c) Bolick asserts on appeal that counsel should have filed a motion for a change of venue but fails to demonstrate any basis for such motion. In order to support a motion for a change of venue, Bolick had the burden to demonstrate "(1) that the trial's setting was inherently prejudicial or (2) that the jury selection process revealed actual prejudice to a degree that rendered a fair trial impossible. [Cit.]" *Brady v. State*, 270 Ga. 574, 575 (3) (513 SE2d 199) (1999).

Although two jurors admitted during voir dire that they knew the victim, both stated that they would be able to consider the case solely on the evidence presented and to reach a fair verdict. Further, the fact that the victim in this case was related to "prominent" members of the legal community does not, in and of itself, require a change of venue. See *Walker v. State*, 223 Ga. App. 21 (476 SE2d 801) (1996). As such, we uphold the trial court's finding that counsel was not ineffective for failing to file a change of venue motion.

(d) Bolick claims trial counsel should have asked that a prospective juror be removed for cause because of her response to his counsel's question "is there any reason that anybody on this panel, if possible, would just prefer not to serve on this case?" The prospective juror responded that "I don't have no open mind, and I forget what all happened. I went to a psychiatrist one time, and she told me I don't concentrate." According to Bolick, the juror should have been disqualified under OCGA § 15-12-163 (b) (3), because she suffered from a mental illness. There is no merit to this contention. The simple fact that an individual makes one visit — or multiple visits — to a psychiatrist does not per se disqualify that individual from jury service due to mental illness. Further, this juror did not affirmatively respond

when her panel was asked, during the qualification stage of voir dire, whether she had already formed an opinion, held any biases against the parties, or could fairly and impartially decide the case. See OCGA § 15-12-164 (a) (1)-(3). As such, Bolick has failed to demonstrate a basis upon which this prospective juror should have been removed from the panel for cause. See *Harris v. State*, 178 Ga. App. 735, 736 (344 SE2d 528) (1986). Counsel cannot, therefore, be deemed ineffective for failing to move for such disqualification.

(e) Bolick argues that counsel was ineffective for failing to object (i) to the State's request to allow Detective Bill Carlisle to remain at the State's table after the rule of sequestration was invoked and (ii) when Carlisle was allowed to testify after other witnesses for the State. Immediately prior to presenting its first witness, the State moved to sequester the witnesses but requested permission to allow Carlisle to remain at the table. When asked why he did not object to Carlisle's presence in the courtroom, counsel stated that, based upon his experience and the facts of this case, he did not feel that Bolick would have been prejudiced in any way by Carlisle's presence at the prosecutor's table.

The trial court found that counsel's failure to object did not constitute ineffective assistance and further stated in its order that it would have utilized its discretion to overrule such objections. See *McKenzie v. State*, 249 Ga. 582 (1) (292 SE2d 692) (1982). This Court finds that (i) the trial court's finding was not clearly erroneous, and (ii) Bolick has failed to demonstrate that the trial court's decision to allow Carlisle to remain in the courtroom without testifying first was an abuse of discretion, particularly in light of the fact that Bolick subsequently admitted to every act for which he eventually was sentenced.

(f) According to Bolick, trial counsel "deliberately failed to establish a defense by intentionally limiting his cross-examination of state witnesses" and "failed to address important and critical issues . . . which were vital to [the] defense."

(i) When questioned during the motion hearing, counsel testified that he could not mount a "traditional defense," because Bolick admitted that he committed most of the offenses in the indictment. Therefore, counsel feared that intense cross-examination of the victim would "antagoniz[e] the victim in the eyes of the jury because there was very little mitigation to present to the jury." As to the cross-examination of the other witnesses, counsel testified that he felt the most effective way of dealing with some of them was not to "highlight" or "reiterate" their testimony through cross-examination, but to "get them off [the stand] as quickly as possible." After reviewing the trial transcript, the trial court found that counsel's performance clearly did not fall below the level of reasonable professional

assistance. This finding is supported by the record.

(ii) Bolick also claims that counsel failed to address an "important or critical issue" to his defense, i.e., alleged inconsistencies in the victim's statement to the police and her trial testimony regarding whether she remembered how she received her injuries.

The victim gave a statement to police three days after the attack, during which the following exchange occurred: "[Victim] I do not remember what happened to my face I don't know. . . . [Detective Carlisle:] You don't know if he hit you, kicked you or what? [Victim:] I have no idea." However, at trial, the victim repeatedly asserted that she did not lose consciousness and that her facial injuries were caused when Bolick "bashed" her face into the carpet before he dragged her into the closet.

Bolick asserts that this issue is critical to his defense based upon his testimony that the victim received the injuries when she passed out after he choked her. According to Bolick, counsel was ineffective due to his alleged failure to cross-examine the victim regarding her statements to police. However, the trial court found that counsel's performance demonstrated "sound trial strategy. . . . [I]n choosing not to attack the victim with slight, seeming inconsistencies between the statement and her testimony, [counsel] did not fall below the wide range of reasonable professional assistance required by the Constitution." (Punctuation omitted.) This conclusion is not clearly erroneous and is, therefore, affirmed.

Further, pretermitting the issue of the reasonableness of counsel's actions, the specific method of causation of the victim's injuries is an issue only as to Count 9 of the indictment, aggravated assault.[4] As this count was merged into Count 8 for sentencing purposes, Bolick is unable to demonstrate any harm resulting from counsel's alleged ineffectiveness as to this issue. See *Griffin v. State*, 265 Ga. 552, 554 (6) (458 SE2d 813) (1995).

(g) In response to Bolick's assertion that counsel was ineffective for failing to request jury instructions on simple assault and theft by taking, we note that both instructions were, in fact, given by the trial court. Therefore, this enumeration is without merit.

(h) Finally, Bolick claims that counsel's closing argument was prejudicial toward him in that it inflamed the jury and weakened his defense. At the motion for new trial hearing, however, counsel explained that:

---

[4] In Count 9, Bolick was charged with aggravated assault in that he made "an assault upon the [victim] with an unknown solid object which when used offensivley [sic] against a person, is likely to result in serious bodily injury, to wit: by striking said victim about her face in an unknown manner with said unknown solid object."

> [w]hat we were trying to do is acknowledge, because he acknowledged wrongdoing, we were trying to concede or acknowledge that there were terrible things that happened and that there were reasons why the jury certainly could be enraged by what occurred; but our theory here was that the state had gone overboard in drafting this indictment. . . . [Based on Bolick's admissions on the stand,] there were certain things that we had to concede and, you know, it's always better, I think, to raise those issues rather than appear to be ignoring them.

Based upon this explanation, the trial court found that counsel's closing argument embodied a strategic decision that did not rise to the level of ineffective assistance. See *Mize v. State*, 269 Ga. 646, 655 (11) (501 SE2d 219) (1998). Having reviewed the record, we agree with this finding.

In sum, the trial court's determination that Bolick was not denied the effective assistance of counsel is supported by the record and, therefore, affirmed.

2. In his second enumeration of error, Bolick claims he was denied due process of law when the State suppressed the victim's November 15, 1997 statement to police which "clearly contained favorable evidence" to the defense, in violation of *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963). We agree with the trial court's determination that there is no support for Bolick's assertion.

> In order to prevail on a *Brady* claim, [Bolick] must show: that the State possessed evidence favorable to the defendant; the defendant did not possess the evidence nor could he obtain it himself with any reasonable diligence; the prosecution suppressed the favorable evidence; and had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceeding would have been different.

(Citation and punctuation omitted.) *Mize v. State*, supra at 648-649. The State's affirmative duty to disclose does not attach, however, unless the evidence is "clearly exculpatory." *Pontoon v. State*, 177 Ga. App. 868 (341 SE2d 505) (1986). In this case, the State could hardly have been charged with recognizing the evidence at issue, which involved specific details of choking, dragging, kidnapping, handcuffing, etc., as "clearly exculpatory." There was no error.

Further, at the motion for new trial hearing, the State testified that the victim's statement to police had been requested on January

21, 1998, and placed into the file months prior to the May 1998 trial. Counsel testified that he reviewed the file several times before trial and was familiar with the victim's statement. The trial transcript showed that defense counsel cross-examined the victim about the possibility that her injuries may have been caused inadvertently, e.g., by striking the bedpost while being dragged to the floor or while unconscious. Counsel also cross-examined the victim about another portion of her statement to police, i.e., her recollection of statements allegedly made by Bolick during the attack. As such, the record demonstrates that the State did not suppress the victim's statement, as counsel clearly had access to the statement prior to trial.

3. Bolick also contends that the State knowingly presented false testimony by the victim and then allowed the testimony to go uncorrected. He points to an inconsistency between the victim's statement to police and her trial testimony about whether she could remember how she received her facial injuries. Having reviewed the record, however, we affirm the trial court's finding that Bolick has failed to present any evidence that the State knowingly put up false testimony. This enumeration is without merit.

4. Bolick's claim that the State should have produced Detective Carlisle as its first witness has been considered and rejected. See Division 1 (e), supra.

5. Bolick challenges the State's closing argument, wherein he claims the State made several improper remarks with the intention of playing on the jurors' emotions. Specifically, Bolick complains about the prosecutor's statement that Bolick appeared to be a nice person, but "don't let him try to trick you by his appearance like he tried to do to [the victim]." The prosecutor also raised the possibility that Bolick may have murdered the victim if she had been unable to escape. Bolick had already admitted, however, that the fact that the victim escaped probably saved her life.

"A prosecutor is permitted to argue inferences from the evidence, even if such inferences are remote, illogical or unreasonable." (Citations and punctuation omitted.) *Crews v. State*, 226 Ga. App. 232, 236 (5) (b) (486 SE2d 61) (1997). See also *Mency v. State*, 228 Ga. App. 640, 648 (2) (i) (492 SE2d 692) (1997). Under the egregious circumstances of this case, this Court finds that the State's arguments were logical, reasonable inferences from the evidence presented, including Bolick's own admissions.

6. Bolick's claim that the trial court erred in failing to remove a potential juror for cause has been considered and rejected. See Division 1 (d), supra.

7. Bolick contends that the trial court erred when it failed to instruct the jury on the defense of "authorized entry" for the burglary charges. Bolick was charged with two counts of burglary: Count 1 —

remaining in the dwelling of another without authority with intent to commit a theft therein, and Count 2 — entering without authority with intent to commit a theft therein. Count 2 was merged into Count 1 for sentencing purposes.

Bolick alleges that he was invited into the victim's home prior to the assault, an assertion in direct contradiction to the victim's testimony. It is undisputed, however, that Bolick *remained* inside the victim's home without authority during the attack. Therefore, the facts did not support a charge of authorized entry as to Count 1, and he was guilty of burglary thereunder. Since Count 2 was merged into Count 1, any failure to charge as to authorized entry was harmless.

Further, the trial court fully charged the jury on the elements of burglary, including the requirement that the defendant enter or remain *without authority*. The jury charge, viewed as a whole, was sufficient to fully apprise the jury of each requirement for finding Bolick guilty of burglary beyond a reasonable doubt. There was no error.

8. In a similar vein, Bolick asserts that the trial court erred when it failed to instruct the jury on "accident and misfortune," contending that it was his sole defense to the charge of kidnapping with bodily injury, Count 3. The "accident or misfortune" to which Bolick refers is his assertion that, while dragging the victim across the floor, he "accidentally" choked her to the point where she lost consciousness and fell, face first with her hands cuffed behind her back, landing with a "loud thump when she hit the ground." Apparently, according to Bolick, it was the fall, not any affirmative act like punching, kicking, or hitting as described by the victim, that caused the substantial facial injuries which form the "bodily injury" portion of Count 3.

> OCGA § 16-2-2 provides that a person shall not be found guilty of any crime committed by misfortune or accident where it satisfactorily appears there was no criminal scheme or undertaking, intention, or criminal negligence. The defense of accident is an affirmative defense. The essence of the defense of accident is that the defendant's act is not intentional.

(Citations and punctuation omitted.) *Mansfield v. State*, 214 Ga. App. 520, 521 (1) (448 SE2d 490) (1994). See also *Brooks v. State*, 262 Ga. 187, 188-189 (3) (415 SE2d 903) (1992). Therefore, even if Bolick's assertions as to how the victim was injured were true, such facts would not support a jury instruction on accident or misfortune. There was no error.

9. Bolick claims that the trial court erred when it denied his oral

request for a presentence investigation prior to sentencing. Bolick, however, had been convicted of kidnapping with bodily injury, which carries a minimum life sentence. OCGA § 16-5-40 (b). Although "[a] court is required to conduct a presentence hearing in a felony case under OCGA § 17-10-2 (a)[,] . . . because the sentence which the court imposed was the statutory minimum sentence under OCGA § [16-5-40 (b)], the court did not err." *Edwards v. State*, 219 Ga. App. 239, 240 (1) (464 SE2d 851) (1995).

10. In his final enumeration, Bolick alleges that the trial court erred in denying his motion to suppress evidence obtained as a result of an illegal search and seizure of his truck.

> When reviewing a trial court's decision on a motion to suppress, this [C]ourt's responsibility is to ensure that there was a substantial basis for the decision. The evidence is construed most favorably to uphold the findings and judgment, and the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous. Further, since the trial court sits as the trier of fact, its findings are analogous to a jury verdict and will not be disturbed if there is any evidence to support them.

(Citations and punctuation omitted.) *Turner v. State*, 233 Ga. App. 413 (1) (504 SE2d 229) (1998).

In this case, the following evidence was presented at the hearing on Bolick's motion to suppress: the victim specifically identified Bolick as her attacker by name and through a photographic lineup and described the truck he used to get to her home before the attack. During their investigation of that attack, police officers discovered that Bolick's employer had contacted the Canton Police Department and reported that Bolick had stolen the truck; the employer claimed that Bolick paid for it with "fictitious" bank papers. Armed with this information, police officers went to Bolick's mother's home, where they could see a truck matching the victim's and employer's descriptions from the road in plain view. The truck was behind the house and parked so that the license tag was hidden against the wall. Police officers seized the vehicle as evidence of both crimes and, during an inventory search, found documents with Bolick's name on them.

After hearing this evidence, the trial court determined that the seizure of the vehicle was supported by probable cause, based upon the fact that the vehicle had been reported stolen and was suspected as having been involved in a violent crime. This finding is supported by the evidence and is not, therefore, clearly erroneous. An inventory search is allowed pursuant to such seizure. See *Evans v. State*, 216 Ga. App. 21, 24 (2) (453 SE2d 100) (1995). The denial of Bolick's

motion to suppress is affirmed.

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED JUNE 22, 2000.

Michael J. Bolick, *pro se.*

*T. Joseph Campbell, District Attorney, Pamela D. Brophy, Assistant District Attorney,* for appellee.