## A07A0834. SNELSON v. THE STATE.
### (648 SE2d 647)

PHIPPS, Judge.

Xavier Keith Snelson was charged with kidnapping, false imprisonment, terroristic threats, aggravated assault, armed robbery, theft by taking, and battery. After being convicted on all counts except armed robbery, he obtained a new attorney who moved for a new trial on grounds of ineffective assistance of trial counsel. Snelson appeals the denial of his motion for new trial on those grounds. Finding no error, we affirm.

"In order to prevail on a claim of ineffective assistance of counsel, [Snelson] must show both that counsel's performance was deficient and that the deficient performance was prejudicial to his defense."[1]

> The first prong of this test cannot be met unless a defendant overcomes the strong presumption that his counsel's performance fell within a wide range of reasonable professional conduct and his counsel's decisions were made in the exercise of reasonable professional judgment. The inquiry focuses on the reasonableness of counsel's conduct from counsel's perspective at the time of trial. Thus, the

[1] *Turpin v. Helmeci*, 271 Ga. 224, 226 (518 SE2d 887) (1999) (citation omitted).

courts will not second-guess counsel's decisions concerning matters of trial strategy and tactics.[2]

The test for reasonable attorney performance has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.[3]

The decisions on which witnesses to call, whether and how to conduct cross-examination, which jurors to accept or strike, what trial motions should be made, and all other strategic and tactical decisions are the exclusive province of the lawyer after consultation with his client. Trial counsel's strategic decisions made after thorough investigation are virtually unchallengeable.[4]

To meet the second prong of the test for showing ineffective assistance of counsel, Snelson "must show that there is a reasonable probability that, absent any unprofessional errors on counsel's part, the result of his trial would have been different."[5] The trial court's factual determinations with respect to effective assistance of counsel will be affirmed unless the trial court's findings are clearly erroneous.[6]

State's evidence showed that Snelson worked as a handyman for Sharon Burns. Burns testified that on August 2, 2005, Snelson came to her house early in the morning and, although he helped her with yard work all day, he was unusually tense. According to Burns, she and Snelson were talking on the back deck of her house later in the afternoon, when he became irritated because she would not let him borrow her car. Burns testified that because Snelson's behavior began to make her feel uncomfortable, she asked him to leave. When he refused to do so, she threatened to call the police. He then became enraged, shoved her from the deck of her house into the breakfast

---

[2] *Quintanilla v. State*, 273 Ga. 20, 21-22 (3) (537 SE2d 352) (2000) (citations and punctuation omitted).

[3] *Boyd v. State*, 275 Ga. 772, 776 (3) (573 SE2d 52) (2002) (citation and punctuation omitted).

[4] *Bolick v. State*, 244 Ga. App. 567, 569-570 (1) (a) (536 SE2d 242) (2000) (citation omitted).

[5] *Phillips v. State*, 280 Ga. 728, 730 (2) (632 SE2d 131) (2006) (citation omitted).

[6] *Boyd v. State*, supra, 275 Ga. at 774.

room, threw her onto the floor, dragged her into the living room, held a knife to her throat, and threatened to kill her while calling her a "Goddamn bitch." He agreed, however, not to kill her after she began crying, pleading with him, and begging him not to take her life. Burns testified that when Snelson began to express second thoughts that he might as well kill her because he would go to jail for a long time in any event, she retrieved her pocketbook and gave him her car keys, $180 in cash, and a note she had written saying that she had loaned him the car.

Burns did not immediately alert the police because Snelson threatened to kill her, or to have her killed, if she told anyone. Before Snelson left Burns's house, she assured him that she would pretend as though nothing had happened and would say she had tripped over her (clumsy) dog if anyone asked about her injuries.

A police officer later observed Snelson having a heated argument with a female passenger while in Burns's car. Because the officer found crack cocaine and an open container of an alcoholic beverage in the car, Snelson was arrested for those offenses. He was not, however, charged with theft of the car and did not show the arresting officer the note saying that he had permission to use the car. When a police officer telephoned Burns to tell her what had happened, he asked her if she had given Snelson permission to use the car. Although she responded in the affirmative, the officer testified at trial that she sounded quite nervous and unconvincing. Moreover, Burns later met with her attorney, Diana Young, on another matter, and Young convinced her to report what actually had happened to the police.

The police officer to whom Burns reported the incident testified to extensive bruises and abrasions he observed throughout her body. Photographs of these injuries were admitted in evidence. The state presented expert testimony that Burns's injuries could have been inflicted in the manner she described.

Snelson testified at trial that during the time period in question, Burns had been going through a divorce and drinking heavily, and that he had actually been staying at her house since about July 23 because she was afraid to be alone. Snelson further testified that Burns loaned him her car quite often and, in fact, had loaned him the car and written him the note verifying that he had permission to use it on August 1, the day before the alleged assault. Snelson explained that on August 1, he had asked Burns to write him the note because she had recently been calling his daughter and other people inquiring as to his whereabouts while he was using the car. Snelson testified that when he returned the car to her on August 2, she told him that she had stumbled and fallen over her dog. According to Snelson, Burns volunteered to let him use her car again on August 2 and actually gave him money to go out and purchase marijuana for her.

Burns's testimony concerning the note was brief. She testified only that she had refused to loan her car to Snelson and that, before he left her house, she had written him a note saying that she had loaned him the car. Although Burns did not explicitly testify that Snelson forced her to write the note, the police officer who took Burns's pretrial statement testified that she had said that Snelson had done so.

The state also introduced similar transaction evidence showing that in 2001, Snelson had assaulted another woman in much the same manner he had assaulted Burns, i.e., by getting on top of her, choking her, calling her a "bitch" while threatening to take her life, and causing visible swelling and bruising to various parts of her body.

Because of a prior conviction for armed robbery, Snelson was given a mandatory sentence of life imprisonment without possibility of parole for his kidnapping conviction under OCGA § 17-10-7 (b). And because of other prior felony convictions, he was given the maximum sentences without possibility of parole for his remaining felony convictions under OCGA § 17-10-7 (c).

After Snelson's trial, his new attorney obtained a copy of the note Burns had written and admitted it in evidence at the motion for new trial hearing. As testified to by Snelson, the note is indeed dated August 1, 2005, and reads: "I, Sharon Burns, have loaned Keith Snelson my car until 9:00 a.m. on Aug. 2, 2005 for the purpose of his transportation . . . [illegible] . . . to help me."

Testimony given by Snelson's trial attorney at the motion for new trial hearing showed that he had not obtained a copy of the note for essentially two reasons. Although he was allowed to review the entire contents of the state's case file several times pursuant to the Cobb County District Attorney's Office's open file policy, apparently the note was not in the file because it was not introduced in evidence at trial. And counsel testified that he saw no need to obtain a copy of the note, as he did not consider the date of the note to be a significant discrepancy that called Burns's credibility into question, because Burns had testified to writing it under duress and could easily have misdated it.

At the motion for new trial hearing, Snelson's daughter, Kinika Johnson, and his former girlfriend, Irene Oyula, appeared as witnesses. Corroborating Snelson's version of events, both Johnson and Oyula testified that Snelson had appeared at their houses on August 1 driving Burns's car and had showed them Burns's note giving him permission to use the car. Johnson further testified that she had suggested that Snelson obtain some kind of documentation that he had permission to drive Burns's car whenever he was using it, because of Burns's calls to her house. Counsel testified that he had

talked to both Johnson and Oyula about the note, but he did not recall either of them telling him that they had actually seen the note on August 1.

1. Snelson charges his trial attorney with ineffective assistance in not utilizing Georgia's reciprocal discovery procedure because, if he had done so, he would have obtained a copy of the note and reviewed it for use at trial.

Testimony given by counsel at the motion for new trial hearing showed that counsel did not opt into reciprocal discovery because he was allowed to review the state's entire case file pursuant to the district attorney's office's open file policy. Although that consideration would otherwise provide strategic grounds for counsel's discovery decision,[7] it does not answer the question of whether counsel should have reviewed the note before trial.

As his reason for not doing that, counsel testified that whether the note was dated August 1 or August 2 was not material because Burns could easily have misdated the note. But Snelson testified that Burns actually wrote the note on August 1, not that it simply bore that date. In cross-examining Snelson, the prosecuting attorney sought to show that Snelson would not have asked Burns to write a note giving him permission to use her car if he had not thought that he might need the note in his defense in this prosecution. And in closing argument, the prosecutor commented that, contrary to an abundance of state's evidence, Snelson's version of events was "supported by zilch." Under these circumstances, counsel's failure to review the note for use at trial arguably constituted deficient performance.

For the following reasons, however, Snelson has not carried his burden of establishing prejudice by showing a reasonable probability that the results of the trial would have been different if the defense had introduced the note itself at trial. The central issue in this case was whether Burns's injuries were caused in the manner claimed by her or by Snelson. The extent and severity of Burns's injuries were such that they could not reasonably have occurred in the way claimed by Snelson. That, combined with proof of the extraordinarily similar transaction, provided overwhelming evidence of Snelson's guilt. In addition, Snelson insisted on testifying despite counsel's advice that it would result in admission of his numerous felony convictions as impeachment evidence, which it did. Moreover, Burns was not called to testify at the motion for new trial hearing to explain the discrepancy between her testimony concerning the note and its actual contents. Under these circumstances, we can only speculate about the effect on the trial if defense counsel had obtained the note. All of

---

[7] See *Bolick v. State*, supra, 244 Ga. App. at 570.

208

this distinguishes *Goldstein v. State*[8] and *Gibson v. State*,[9] relied on by Snelson. We, therefore, find no error in the trial court's rejection of Snelson's claim of ineffective assistance of counsel on this ground.

2. Snelson charges his trial attorney with ineffectiveness in failing to call Johnson and Oyula as defense witnesses.

At trial, counsel explained to Snelson that he did not want to call Johnson and Oyula as witnesses because it would cause the defense to lose its right to open and conclude closing argument. At the motion for new trial hearing, counsel testified, however, that during the trial he became aware of the change in Georgia law allowing the prosecutor to open and conclude closing argument regardless of whether the defendant has introduced evidence,[10] and that he decided not to call Johnson and Oyula as defense witnesses, because neither witness's testimony would have been helpful. On balance, Oyula's testimony might well not have been helpful, because there were in fact conflicts between Snelson's and Oyula's versions of events. We, therefore, agree that counsel had a valid strategic reason for not calling Oyula as a witness. And even if counsel did not have countervailing strategic reasons for not calling Johnson as a defense witness, for the reasons given in Division 1, supra, her testimony was not so material as to have created a reasonable probability that if she had testified the result of the proceeding would have been different.

3. Snelson charges his trial lawyer with ineffectiveness in failing to object to certain opinion testimony because it improperly bolstered Burns's credibility and invaded the province of the jury.

The testimony at issue was given by Burns's attorney, Young, who had represented Burns in various civil matters. Before leaving Burns's house on August 2, Snelson threatened to kill her or to have her killed if she reported him to the police. Although Burns initially complied with Snelson's demand, she decided to report him to the police after consulting with Young. Young testified that when she met with Burns, she strongly advised Burns to report Snelson to the police after Burns told her what Snelson had done and after she observed Burns's injuries. In response to further questioning, Young testified that she had given Burns that advice because she thought a serious crime had been committed and that the perpetrator needed to be prosecuted. Although counsel could have objected to this testimony, he testified that he did not find it sufficiently harmful to warrant an

---

[8] 283 Ga. App. 1 (640 SE2d 599) (2006).

[9] 280 Ga. App. 435, 436 (1) (634 SE2d 204) (2006).

[10] See OCGA § 17-8-71.

objection. This decision too was a question of trial strategy that does not form the basis of a claim of ineffective assistance of counsel.[11]

4. Snelson charges his trial attorney with ineffectiveness in failing to object to the trial court's failure to merge the kidnapping and false imprisonment convictions.

Snelson's kidnapping conviction was supported by evidence that he had abducted Burns by forcing her from the deck of her house into the breakfast room, and his false imprisonment conviction was supported by evidence that, after forcing her into the breakfast room, he dragged her into the more secluded area of the living room and held her on the floor of that room against her will. Because the kidnapping and false imprisonment charges were thus based on different conduct, the two did not merge.[12] Counsel's failure to make a futile objection did not constitute ineffective assistance.

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

DECIDED MAY 30, 2007 —
RECONSIDERATION DENIED JUNE 28, 2007.

*H. Maddox Kilgore*, for appellant.
*Patrick H. Head, District Attorney, Jesse D. Evans, Dana J. Norman, Assistant District Attorneys*, for appellee.

---

[11] *Kania v. State*, 280 Ga. App. 356, 362 (5) (c) (634 SE2d 146) (2006).
[12] See *Upshaw v. State*, 249 Ga. App. 741, 746-747 (4), (5) (549 SE2d 526) (2001).