A98A1209. KITCHENS v. THE STATE.
A98A1210. SPARKS v. THE STATE.
(509 SE2d 391)

SMITH, Judge.

Jody Kitchens and Danda Sparks were convicted by a jury of the offenses of trafficking in cocaine, possession of marijuana with intent to distribute, possession of methamphetamine with intent to distribute, and various counts of possession of a firearm during the commission of a crime. Kitchens also was convicted of carrying a concealed weapon. Their motions for new trial as amended were denied, and they appeal. Finding no reversible error, we affirm.

Construed in favor of the verdicts, evidence was presented that Chris Robertson, a narcotics investigator, set up a controlled drug buy in December 1995 with the assistance of confidential informant Jason Riley. As a result of several telephone conversations, some of which were taped, involving Riley, an individual named Jason Smith, and sometimes Kitchens, Riley arranged to meet a man named "Jody" at a gas station in Auburn, Georgia. At approximately 8:30 p.m. on December 20, Robertson, acting in an undercover capacity, and Riley arrived at the gas station shortly before Kitchens and Sparks arrived in a car driven by Kitchens. Sparks was sitting in the middle of the front seat. Robertson searched Riley for illegal drugs and found none. Riley then exited the car Robertson was driving, entered that of Kitchens, and Kitchens drove away.

Kitchens, Sparks, and Riley returned about five minutes later, and Riley brought a bag to Robertson. After observing that the bag appeared to contain a large quantity of marijuana and some cocaine, Robertson signalled surveillance officers to make an arrest. Georgia State Patrol Trooper Jamey Brown then drove into the gas station parking lot, blocked Kitchens's car, exited his car, and jumped onto the hood of Kitchens's car. Kitchens reached toward the floor of the car, and Brown saw "clearly that there was a large handgun at his feet, and there was some type of long gun in the front seat between

Ms. Sparks and Mr. Kitchens." Brown testified that after seeing the weapons, he held Kitchens at gunpoint. Kitchens and Sparks were removed from the car, which Brown then searched. He discovered a syringe containing a white powdery substance and a black bag containing several of Kitchens's personal items. The bag also contained an electronic index with several names in it and a set of plastic scales containing "a good bit of white powder residue." Evidence also was presented that some of Sparks's personal papers were inside this bag. Brown also discovered a loaded 9mm Ruger handgun that had been at Kitchens's feet, a loaded sawed-off 12 gauge shotgun in the front seat between where Kitchens and Sparks had been sitting, and a marijuana cigarette in the front seat. A substance positively identified as methamphetamine also was discovered inside the car. Brown searched the bag taken by Riley from the car and found inside it several bags of substances identified at trial as marijuana and powder cocaine.

Riley testified, describing his involvement in the incident. He had agreed to assist Robertson in performing "narcotics busts." He stated that his friend, Jason Smith, arranged his contact with Kitchens. Riley testified that after he entered Kitchens's car, they drove around, he received the drugs, and they returned to the Texaco station. After he entered the car, he saw Kitchens place his hand on the gun between Kitchens and Sparks "just to let me know that I knew it was there so nothing funny would happen." He also stated that during the short drive, conversation occurred about whether the drugs were "good." Kitchens told him that the bag contained "two and a half pounds and an ounce of that red rock, and it was . . . real good." Riley removed the drugs from a black bag into a bag he had brought into the car when he entered it. When they returned to the Texaco station, Riley exited Kitchens's car on the pretense of getting money to pay for the drugs, officers appeared at the scene, and Kitchens and Sparks were arrested.

1. Both appellants complain evidence of other crimes was erroneously admitted and that bad character evidence was impermissibly injected into the trial. They base most of these arguments on statements made during taped conversations among Riley, Smith, and Kitchens in which they made plans concerning the drug sale. During the course of those conversations, which included conversation about the amount of time Kitchens was taking to deliver the drugs, the following statements about Kitchens's and Sparks's past behavior were made: Kitchens spoke of the time "it usually takes" to put a deal together; Riley once asked if Kitchens "always takes this . . . long," and Smith responded that "[i]t always takes him a while"; reference was made to Kitchens having "been doing it for twenty years" and being "big time"; Smith also acknowledged that Kitchens, whom he

referred to as "dude," was a "high roller"; and he stated that Kitchens had given Sparks "10 pounds of pot at a time." Riley also acknowledged at trial that Kitchens told him that "next time it [obtaining drugs] would be easier."

Appellants complain that statements concerning other crimes constituted similar transactions and were erroneously admitted because the State failed to serve notice of intent to present such evidence under Uniform Superior Court Rule (USCR) 31.3. They also argue that the statements impermissibly injected evidence of bad character into the trial and that the trial court erroneously failed to give limiting instructions concerning the purpose for which similar transaction evidence could be considered. We conclude that reversal is not required for several reasons. First, the statements concerning appellants' past drug activity were not admitted as similar transactions. Rather, they were admissible under the well-settled rule that "[d]eclarations and circumstances forming a part of the continuation of the main transaction are admissible as res gestae. [Cit.]" *Black v. State*, 154 Ga. App. 441-442 (1) (268 SE2d 724) (1980). "It does not matter that the act or transaction is another criminal offense and does not tend to establish the main offense." (Citations and punctuation omitted.) *Jackson v. State*, 187 Ga. App. 449, 450 (370 SE2d 633) (1988). Here, the statements made in the taped conversations were clearly made in connection with the transaction for which Kitchens and Sparks were arrested, were not premeditated, see *Perkins v. State*, 226 Ga. App. 613, 614 (1) (487 SE2d 365) (1997), and therefore were admissible as part of the res gestae.

Second, the statements, at least as far as Kitchens was concerned, were admissible under the rule that after a conspiracy is proved, a conspirator's declarations made during the course of or in the furtherance of the conspiracy are admissible against co-conspirators. OCGA § 24-3-5; *Ottis v. State*, 269 Ga. 151, 154 (3) (496 SE2d 264) (1998); *Fetty v. State*, 268 Ga. 365, 371 (489 SE2d 813) (1997).[1] And the objected-to statements were made in furtherance of the conspiracy; for the most part they were made in connection with inquiries as to why Kitchens was taking so long to deliver the drugs and discussion regarding Kitchens's ability to deliver the drugs. As declarations made during the pendency of and in furtherance of the conspiracy to sell illegal drugs, the statements were not admitted as

---

[1] Neither appellant contends that a conspiracy was not proven. To prove a conspiracy, "[t]he state need only prove that two or more persons tacitly came to a mutual understanding to accomplish or to pursue a criminal objective. [Cit.]" *Duffy v. State*, 262 Ga. 249, 250 (1) (416 SE2d 734) (1992). The state showed that at least two persons came to an understanding to pursue such an objective by presenting evidence of Kitchens's and Smith's plans concerning the sale of drugs to Riley.

similar transactions, nor were they admitted for the sole purpose of showing bad character. See *Johnson v. State*, 258 Ga. 506, 508 (3) (371 SE2d 396) (1988). The statements instead were relevant and material to the issues in the case and were not inadmissible merely because they incidentally placed character in issue. See *Richie v. State*, 258 Ga. 361, 362 (3) (369 SE2d 740) (1988).

Neither *Baker v. State*, 193 Ga. App. 498 (388 SE2d 402) (1989) nor *Robinson v. State*, 192 Ga. App. 32 (383 SE2d 593) (1989) requires reversal. In *Baker*, this Court held that evidence concerning four separate encounters involving defendant and an undercover agent was inadmissible because of the State's failure to give notice under USCR 31.3. Id. at 500 (2). But the facts of that case do not show that a conspiracy occurred. And in *Robinson*, we held that defendant's statement, which contained admissions of past independent sales and use of cocaine, was erroneously admitted into evidence because the reference to these actions "did not constitute an integral part of a criminal confession nor was each statement an inseparable part of the total oral statement made" to the police officer. Id. at 33. Here, the statements were admissible under the co-conspirator exception to the hearsay rule, discussed above. They were not independent earlier crimes but were directly relevant to the drug sale for which appellants were arrested. Neither a hearing nor a sua sponte limiting instruction was necessary under these facts.[2]

Even assuming, however, that the declarations erroneously placed appellants' characters in issue and should have been redacted as argued by appellants, reversal is not warranted. When error is found, the inquiry becomes whether harm occurred. *Bray v. State*, 221 Ga. App. 218, 219 (471 SE2d 17) (1996). And "[t]he test for determining harmless error is whether it is highly probable that the error did not contribute to the judgment." (Citations and punctuation omitted.) Id. at 219-220. Direct testimony concerning Kitchens's involvement in the sale of marijuana, cocaine, and methamphetamine was presented, and large quantities of these substances, as well as loaded weapons and scales, were found by police officers upon search of the car driven by Kitchens.

As for Sparks's involvement in the transaction, she did testify, denying involvement in the sale. But the evidence also shows that once during the transaction, she participated in the conversation concerning the drugs, asking Kitchens whether the drugs "were good stuff." Furthermore, at least two witnesses saw a large gun between her and Kitchens in the front seat, and evidence was presented that

---

[2] We note that, even assuming that the statements constituted similar transactions, a limiting instruction absent a request was not required. See *State v. Belt*, 269 Ga. 763 (505 SE2d 1) (1998).

scales were found inside a bag containing some of Sparks's personal papers. This evidence against Sparks, as well as that against Kitchens, was overwhelming, and we consequently cannot say that any error occurring in the admission of the objected-to statements contributed to the verdict. Reversal is therefore not required.

2. Sparks argues that her trial counsel was ineffective in failing to properly object to admission of the statements made during the taped telephone calls. To show that trial counsel was ineffective, Sparks must show both that counsel's performance was deficient and that the deficiency so prejudiced her defense that a reasonable probability exists that the outcome of trial would have been different but for the deficiency. *Hassan v. State*, 231 Ga. App. 783, 784 (500 SE2d 644) (1998).

Sparks has not shown that counsel's performance was deficient; as discussed above, the statements were admissible as part of the res gestae. Moreover, even assuming the statements should not have been admitted, Sparks has not shown that the outcome of the trial would have been different but for the deficiency; also as discussed above, other evidence properly admitted against her was overwhelming.

3. Both appellants enumerate as error the trial court's failure to charge the jury on impeachment by proof of a felony conviction. Over the State's objection, the court admitted for impeachment purposes a certified copy of Jason Smith's conviction for the murder of Sparks's son. The court did not, however, instruct the jury on the law of impeachment by proof of felony conviction.

We do not agree with the State that Jason Smith could not be impeached because he did not testify in court; the mere fact that a declarant is not a witness does not render that declarant's hearsay statement unimpeachable. See generally *Brantley v. State*, 177 Ga. App. 13, 16-17 (338 SE2d 694) (1985) (res gestae declarant). Because Smith was indeed impeached by evidence of a crime of moral turpitude, the trial court should have given appellants' request to charge on this issue. See generally *McIntyre v. State*, 266 Ga. 7, 10 (4) (463 SE2d 476) (1995). But as discussed above and also in *McIntyre*, "harm as well as error must be shown for reversal. [Cit.]" Id. at 10. In light of the overwhelming evidence against defendants, we cannot say that the outcome of their trial would have been different but for the court's failure to give this charge.

*Judgment affirmed. Johnson, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED NOVEMBER 18, 1998.

*Kathleen J. Anderson*, for appellant (case no. A98A1209).

*Donna L. Avans,* for appellant (case no. A98A1210).
*Timothy G. Madison, District Attorney, Robin R. Riggs, Assistant District Attorney,* for appellee.