## A99A0923. KELLIBREW v. THE STATE.

(521 SE2d 921)

RUFFIN, Judge.

A jury found Kevin Kellibrew guilty of aggravated assault and aggravated battery for shooting Tyrus Bullock.[1] The trial court sentenced Kellibrew to 20 years on each count, to be served consecutively. On appeal, Kellibrew challenges the sufficiency of the evidence. In addition, Kellibrew contends the trial court erred (1) in requiring him to proceed with trial without adequate notice, (2) in permitting the State to introduce evidence of his character, and (3) in ruling that the two offenses of which he had been convicted did not merge. Kellibrew's claims of error lack merit, and we affirm.

1. Kellibrew contends that the evidence is insufficient to sustain his aggravated assault and aggravated battery convictions. In reviewing Kellibrew's convictions, we view the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). We address only the sufficiency of the evidence, and we do not weigh the evidence or determine the credibility of the witnesses. As long as there is some evidence, even though contradicted, to support each necessary element of the State's case, the jury's verdict will be upheld. *Howard v. State*, 227 Ga. App. 5, 8 (6) (a) (488 SE2d 489) (1997).

Viewed in a light most favorable to the jury's verdict, the evidence shows that the victim, Tyrus Bullock, was working as a security guard at a Hampton Inn on August 3, 1995. At around 10:30 that night, Bullock was waiting to meet his supervisor in the parking lot when he saw a man wearing a dark jogging suit walking through the lot. As a car drove into the lot, Bullock watched the man hide behind some bushes until the car had passed. The man then emerged from the bushes and began walking from car to car, looking into car windows and attempting to open car doors.

After Bullock approached the man and asked him in which room he was staying, the man attempted to flee. Bullock grabbed the man by the jacket and took him inside the hotel. Once inside, Bullock recognized the man as Kevin Kellibrew. Bullock testified that he was able to recognize Kellibrew because they had been in jail together in DeKalb County and had been transferred to the same state prison where they would see each other in the law library and would lift weights together.

According to Bullock, he asked Kellibrew why he was trying to

---

[1] Kellibrew also was charged with possession of a firearm by a convicted felon during the commission of a crime, but this count was nolle prossed; hence, it is not before us.

break into cars, and Kellibrew responded that he was "trying to make a living." Kellibrew then asked Bullock if he knew him from Reidsville. Bullock said "Kellibrew, you don't know me from Reidsville." Bullock testified that Kellibrew looked surprised when Bullock used Kellibrew's name.

Bullock, who told the clerk at the front desk to call the police, heard Kellibrew say "Man, I'm not going to jail. I can't go back to jail. I'm not going to jail." Bullock then noticed that Kellibrew was holding an automatic pistol. Kellibrew shot Bullock in the right hand, and Bullock began to run down a hallway toward a back door. As Bullock was running, Kellibrew continued shooting at him, hitting him in his legs, back and hip. Bullock reached the door and collapsed against it. Once Bullock was down, Kellibrew walked back toward the front desk. Bullock heard two shots fired. Kellibrew then returned to Bullock and shot him six more times, hitting him in his head, neck and back. As a result of the gunshot to his neck, Bullock was partially paralyzed from the neck down.

Kellibrew contends the evidence was insufficient to sustain his convictions because two witnesses testified that he was at the home of an attorney who was representing him in a workers' compensation case when the shooting took place. However, Kellibrew's "alibi defense does not demand an acquittal because the jury was authorized to disbelieve it." *Kinney v. State*, 234 Ga. App. 733, 735 (1) (506 SE2d 441) (1998). Given the victim's identification of Kellibrew as the person who fired the gun, the jury was authorized to find Kellibrew guilty of the offenses charged.

2. Kellibrew maintains that the trial court erred in requiring him to proceed to trial without giving him adequate notice of trial in accordance with Uniform Superior Court Rule (USCR) 32.1. That rule requires that

> [t]he judge . . . shall prepare a trial calendar, shall deliver a copy thereof to the clerk of court, and shall give notice in person or by mail to each counsel of record . . . and the defendant at the last address indicated in court records, not less than 7 days before the trial date or dates.

According to Kellibrew, the trial court violated this rule by notifying him on December 19 that he would have to go to trial on December 20, 1995. We disagree.

On October 27, 1995, Kellibrew filed a demand for a speedy trial pursuant to OCGA § 17-7-170. Thus, the State had to try him no later than December 31, 1995, the end of the next succeeding term of

court,[2] or he would have been discharged and acquitted by operation of law. See OCGA § 17-7-170 (b). The State agreed to continue the trial to January 2, 1996, if Kellibrew would withdraw his speedy trial demand, but Kellibrew would not drop his demand.

In requiring Kellibrew to proceed with trial, the trial court did not err notwithstanding any deviation from USCR 32.1. As this Court recently recognized, "[c]ompliance with Rule 32.1 must be judged in the circumstances of each case." *Sykes v. State*, 236 Ga. App. 518, 521 (2) (511 SE2d 566) (1999). Where, as here, compliance with the notice requirement of USCR 32.1 would cause the State to violate a defendant's right to a speedy trial, a trial court does not abuse its discretion in proceeding to trial in accordance with the defendant's speedy trial demand. *Dally v. State*, 237 Ga. App. 577, 578-579 (2) (516 SE2d 87) (1999).

3. According to Kellibrew, the trial court erred in permitting the State to introduce evidence regarding his incarceration for prior convictions. Kellibrew argues that this evidence improperly introduced his character into evidence. This argument lacks merit.

"No evidence of general bad character or prior convictions shall be admissible in a criminal case unless and until the defendant shall have first put his character in issue. OCGA § 24-9-20 (b)." (Punctuation omitted.) *Weems v. State*, 269 Ga. 577, 580 (3) (501 SE2d 806) (1998). "Authority appears to be split on the question of whether mentioning a defendant's prior incarceration places his character into evidence." *Setser v. State*, 233 Ga. App. 822, 825 (2) (505 SE2d 798) (1998). Even if such testimony does impugn a defendant's character, its admission is not automatically error. As this Court has recognized,

> [t]here are numerous instances where the State may properly offer evidence that the defendant has committed prior crimes for a purpose other than to show the defendant is a person of bad character. The fact that such evidence may reflect adversely on the defendant does not necessarily place his character in issue within the meaning of OCGA § 24-9-20 (b).

(Punctuation omitted.) *Agony v. State*, 226 Ga. App. 330, 332 (3) (486 SE2d 625) (1997).

As Bullock was the only witness who could identify Kellibrew, the State's case rested on the credibility of Bullock's positive identification of Kellibrew as the culprit. Thus, the evidence that the two

---

[2] The terms of court in DeKalb County begin the first Monday in January, March, May, July, September and November. OCGA § 15-6-3 (37).

had spent time together in jail was relevant to Bullock's ability to recognize Kellibrew.[3] See *Battle v. State*, 195 Ga. App. 542, 544 (2) (394 SE2d 788) (1990). Moreover, we note that Bullock testified that, before shooting him, Kellibrew said he "can't go back to jail." This statement was clearly admissible as part of the res gestae even if such evidence incidentally placed Kellibrew's character in evidence. See *Parrish v. State*, 237 Ga. App. 274, 282 (8) (514 SE2d 458) (1999).

"The admission of evidence is discretionary with the trial court, and this court will not interfere with that court's ruling absent abuse." (Punctuation omitted.) *Oliver v. State*, 232 Ga. App. 816, 824 (4) (503 SE2d 28) (1998). In this case, the trial court did not abuse its discretion in admitting evidence of Kellibrew's prior incarceration.

4. Finally, Kellibrew contends that the trial court erred in ruling that the aggravated assault conviction and the aggravated battery conviction did not merge. In determining whether merger has occurred, the key question is whether the different offenses are proven with the same facts. *Reeves v. State*, 233 Ga. App. 802, 805 (2) (505 SE2d 540) (1998). "[I]f one crime is complete before the other takes place, the two crimes do not merge. However, if the same facts are used to prove the different offenses, the different crimes merge." (Punctuation omitted.) Id.

The indictment in this case charged Kellibrew with aggravated battery in that he maliciously caused bodily harm to Bullock by shooting him, rendering his legs and arms useless. The indictment further charged Kellibrew with aggravated assault in that he "did make an assault on the person of Tyrus Bullock, with a handgun."

The evidence showed that, after shooting Bullock in the hand, back and leg, Kellibrew left Bullock and went toward the front desk where Kellibrew fired additional shots. Kellibrew then *returned* to Bullock and shot him in the neck, paralyzing Bullock. Thus, rather than having one continuous shooting spree, the evidence demonstrates that two separate acts occurred — the first constituting aggravated assault and the second constituting aggravated battery. Accordingly, "the evidence in this case does not demonstrate that the aggravated assault and the aggravated battery were based on the same conduct within the contemplation of OCGA § 16-1-7, with the result that the separate convictions for these offenses may stand." (Punctuation omitted.) *Malone v. State*, 226 Ga. App. 185, 187 (2)

---

[3] Kellibrew contends that Bullock's testimony was irrelevant because he never challenged Bullock's ability to identify him. Kellibrew's defense in this case was that he "wasn't there and did not do this horrible crime." In closing, his attorney argued that Bullock's drug use "could affect his ability to observe." Thus, the crux of Kellibrew's defense was that Bullock mistakenly identified him as the culprit. Accordingly, Kellibrew *did* challenge Bullock's ability to identify him, and Bullock's testimony was relevant to his ability to identify Kellibrew.

(486 SE2d 57) (1997).
*Judgment affirmed. McMurray, P. J., and Andrews, P. J., concur.*

DECIDED SEPTEMBER 2, 1999.

*Cynthia A. Price, Julie D. Herrin*, for appellant.
*J. Tom Morgan, District Attorney, Thomas S. Clegg, Barbara B. Conroy, Assistant District Attorneys*, for appellee.