## A02A2122. PITTS v. THE STATE.
### (580 SE2d 618)

ELDRIDGE, Judge.

A Fulton County jury found Orlando Pitts guilty of trafficking in cocaine, possession of cocaine with intent to distribute, possession of marijuana with intent to distribute, and possession of marijuana — less than an ounce, which charges arose after Pitts was stopped by Atlanta Police Officer J. L. Stafford for a traffic violation at the intersection of Metropolitan and Wells Street in Atlanta, and marijuana was discovered in plain view on the driver's seat of Pitts' vehicle; from a subsequent search of Pitts, the passenger/co-defendant Darlene Harmon, and Pitts' vehicle, Stafford seized 69.5 grams of cocaine packaged in three separate bags, and twenty-eight grams of marijuana packaged in five separate bags. Pitts appeals and raises numerous claims of error and subparts thereto in a 70-page brief.[1] Upon careful review of Pitts' contentions, we find as follows.

1. In his first claim of error, Pitts makes several arguments by which he attempts to demonstrate that the trial court erred in admitting all of the bags of drugs contained in State's Exhibits 1 and 2 without proper "authentication" of each bag.

(a) The record shows that State's Exhibit 1 contained the five seized bags of marijuana and State's Exhibit 2 contained the three seized bags of cocaine. Only one bag in State's Exhibit 1 and one bag in State's Exhibit 2 were tested by the Georgia Bureau of Investigation Crime Laboratory ("GBI Crime Lab") and identified as marijuana and cocaine, respectively. Because of this, Pitts claims that seizing officer Stafford could not "authenticate" the contents of all of the bags contained in State's Exhibits 1 and 2, thereby rendering both exhibits inadmissible. We disagree.

No objection was made in the court below on the basis now urged; accordingly this claim is waived. Further, the actual contents of the several plastic bags recovered from the crime scene were irrelevant to the "authentication" established by seizing officer Stafford; his testimony went to the "chain of custody" of the bags containing *suspected* drugs, not the actual contents of the bags. In this instance,

---

[1] See Court of Appeals Rule 23 (e) (briefs shall be limited to 50 pages in criminal cases).

the issue is whether there is a reasonable certainty that the marked bags introduced are the same as those seized, without substitution or tampering.[2]

At trial, Officer Stafford testified that, after he seized the bags of suspected drugs, he personally transported them to police property. There, Stafford separated the bags of suspected cocaine from the bags of suspected marijuana; he packaged the bags of suspected marijuana in one bag and marked it with his name and case identification number. He packaged the bags of suspected cocaine in another bag and marked it with his name and case identification number. He then packaged the two marked bags in a single bag, marked it with his name and case identification number, and turned the bag into police property by placing the bag in a secured "Drug Mailbox." Based upon appearance, his handwriting, his name, and the case identification number, Stafford identified at trial State's Exhibits 1 and 2 as containing the same bags he seized at the scene, packaged, and turned into police property.[3] This testimony established with reasonable assurance the identity (as opposed to the contents) of the bags, which met the State's burden as to "authentication" from Stafford.[4]

(b) GBI Crime Lab forensic expert Michelle Young testified about the analysis she personally performed on a sample bag from State's Exhibit 1, which showed the contents thereof to be marijuana, and the analysis she personally performed on a sample bag from State's Exhibit 2, which showed the contents thereof to be cocaine. She also stated that, as a matter of Crime Lab standard procedure, a lab assistant performed a "mass spec"[5] test on the contents of each sample bag to ensure the accuracy of the Crime Lab's analysis. Young testified that only after conducting her own tests and reviewing the results of the "mass spec" tests could she conclude that the contents of the tested sample bags were marijuana and cocaine, respectively. Pitts argues that, because Young did not personally perform the "mass spec" tests, her testimony regarding the results thereof was inadmissible hearsay, leaving the contents of the tested sample bags "unauthenticated" under the Crime Lab's own standard procedure and, thus, inadmissible.

Again, no objection was raised in the court below on the basis

---

[2] No allegations of substitution or tampering are before this Court.

[3] The remainder of the chain of custody from police property to the GBI Crime Lab was established by Officer T. J. Chambers and has not been challenged herein; nor has the chain of custody from the GBI Crime Lab to the courtroom.

[4] *Mosely v. State*, 217 Ga. App. 507 (1) (458 SE2d 165) (1995).

[5] Gas chromatography mass spectrometry.

now urged, and this claim of error is waived. Further, Young's testimony was not hearsay.

> Where an expert personally observes data collected by another, his opinion is not objectionable merely because it is based in part on the other's findings. . . . Where, as here, the expert is available for full and searching cross-examination, the failure of the expert to test independently the control sample, after observing its analytical test results, goes only to the weight of the evidence and not to its admissibility.[6]

In addition, fulfillment of the GBI Crime Lab's standard operating procedures is not a condition precedent for evidentiary admission. "[M]ere contradiction of a recognized expert's method of conducting a scientifically acceptable test is not fatal to admissibility."[7] Pitts' argument goes to weight not admissibility.

(c) Pitts also claims that each bag in State's Exhibits 1 and 2 was not individually "designated," thereby causing confusion and denying him a fair trial. Other than this conclusory statement, however, Pitts directs our attention to no example of due process-denying "confusion" engendered by the bags contained in State's Exhibits 1 and 2, and our review of the record reveals none. In fact, it appears that the bags were individually designated for the jury's consideration, rendering Pitts' contention factually meritless.

2. Next, Pitts contends the evidence was insufficient to support his conviction for trafficking in cocaine, and, thus, the trial court erred in denying his motion for a directed verdict thereon. We do not agree.

(a) Pitts' first claim is premised upon his earlier argument that the identification of State's Exhibit 2 as cocaine was based on hearsay concerning a lab assistant's "mass spec" test, making such identification inadmissible. This contention has been decided adversely to Pitts in Division 1 (b), supra.

(b) Pitts' next claim is that, in order to support a conviction for trafficking in cocaine, "[t]he burden was upon the State at trial to prove beyond a reasonable doubt that the contents of every bag contained in State's Exhibit #2 was cocaine[,]" and, thus, the testing of only one bag, State's 2-A, rendered the evidence insufficient to support his conviction for trafficking.

An appellate court determines only the legal sufficiency of the

---

[6] (Citations and punctuation omitted.) *Robinson v. State*, 231 Ga. App. 368, 370 (3) (498 SE2d 579) (1998).

[7] (Citation and punctuation omitted.) Id.

evidence adduced below. As long as there is some evidence to support each necessary element of the State's case, the verdict will be upheld.[8] Here, Pitts was indicted for trafficking in that he possessed cocaine in excess of twenty-eight grams with a purity of at least ten percent. At trial, expert testimony established that the sample bag tested from State's Exhibit 2, State's 2-A, contained 54.3 grams of cocaine with a purity of 85 percent. This evidence was sufficient to sustain Pitts' conviction for trafficking in cocaine under the standard of *Jackson v. Virginia*,[9] notwithstanding the failure to test the other two bags contained in State's Exhibit 2.

(c) At the time of the traffic stop, the passenger in Pitts' vehicle, co-defendant Harmon, told the police that the vehicle belonged to her. Thus, Pitts claims that the State presented "no evidence" that the trafficking amount of cocaine contained in State's 2-A, found under the front passenger seat of the vehicle, was in Pitts' actual or constructive possession. This argument ignores the fact that Harmon took the stand at trial and testified that the vehicle was, in fact, Pitts' car; that she introduced a receipt demonstrating Pitts' purchase of the car; that she testified that she was present when Pitts purchased the cocaine contained in State's 2-A; and that she only told the police that Pitts' vehicle was hers because she "was scared and . . . panicked." Issues involving conflicts in the evidence and the credibility of witnesses are matters entirely within the province of the jury. Clearly, the jury found Harmon's version of events credible, since they acquitted her of each of the offenses for which they found Pitts guilty.[10] This Court addresses only the sufficiency of the evidence, and "we do not weigh the evidence or determine the credibility of the witnesses."[11] Accordingly, the instant claim provides nothing for us to review.

3. Pitts also claims the trial court erred in denying his motion for a directed verdict as to the offense of possession of marijuana with intent to distribute because the evidence was insufficient to establish beyond a reasonable doubt the element of "intent to distribute." We disagree.

To support a conviction for possession of marijuana with intent to distribute, the State must prove more than mere possession.[12] Here, the twenty-eight grams of marijuana were divided into five

---

[8] *Upshaw v. State*, 249 Ga. App. 741, 745 (3) (549 SE2d 526) (2001).

[9] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); see also *Edwards v. State*, 219 Ga. App. 239, 246 (7) (464 SE2d 851) (1995).

[10] The jury convicted Harmon of the lesser included offenses of simple possession of cocaine and misdemeanor possession of marijuana.

[11] *Kellibrew v. State*, 239 Ga. App. 783 (1) (521 SE2d 921) (1999).

[12] *Williams v. State*, 199 Ga. App. 544 (1) (405 SE2d 539) (1991).

individual packages, as opposed to a single bag.[13] The five individual bags of marijuana were found with a large, distribution amount of cocaine. Harmon testified that both the marijuana and cocaine belonged to Pitts, and there was no evidence that the individual bags of marijuana were for a purpose other than distribution, just like the cocaine with which the marijuana was found. Pitts did not take the stand and presented no evidence that the marijuana was for personal use.[14] Further, Harmon testified that Pitts was unemployed.[15] Viewing these circumstances in a light most favorable to upholding the verdict, as we must, the evidence is sufficient for a rational trier of fact to find beyond a reasonable doubt that Pitts sells both the marijuana and the cocaine with which he was found.

We reject Pitts' contention that, because only one bag from State's Exhibit 1 was tested, there was no evidence that the four other individual bags in State's Exhibit 1 contained marijuana so as to support an inference of intent to distribute. The GBI Crime Lab forensic expert testified that the contents of the four untested bags looked the same as the contents of the tested bag of marijuana. Harmon testified that the bags contained marijuana. The bags were found at the same time in the same location. And the jury had all five individual bags before them for inspection. This was sufficient evidence from which a jury could conclude that each of the five bags in State's Exhibit 1 contained marijuana.[16]

4. At sentencing, the offense of possession of cocaine with intent to distribute was merged into the offense of trafficking in cocaine pursuant to OCGA § 16-1-7. Accordingly, any claims of error with regard to sufficiency of the evidence demonstrating possession of cocaine with intent to distribute are rendered moot.[17]

5. In two claims of error, Pitts contends the trial court should have excused for cause prospective juror no. 29, Brent Davis, and

---

[13] See, e.g., *Parris v. State*, 226 Ga. App. 854, 856 (487 SE2d 690) (1997) (division of drugs into individual packages is evidence of intent to distribute).

[14] Compare *Clark v. State*, 245 Ga. App. 267, 268-269 (537 SE2d 742) (2000) (eight small bags of marijuana were found in car with four people, and testimony showed that defendant had just purchased the marijuana for their use, as opposed to sale); *Parris v. State*, supra at 856 (defendant testified that the marijuana was for his individual use and, at time of arrest, he "exuded the odor of burnt marijuana").

[15] See, e.g., *Williams v. State*, 208 Ga. App. 460 (1) (431 SE2d 130) (1993) (that defendant is unemployed while in possession of valuable drugs can be evidence of intent to distribute); *Nixon v. State*, 258 Ga. App. 343, 346 (2) (574 SE2d 404) (2002) (unemployed status coupled with large amount of drugs can be evidence of intent to distribute).

[16] *Wiley v. State*, 238 Ga. App. 334, 336 (5) (519 SE2d 10) (1999).

[17] See, e.g., *Joachim v. State*, 263 Ga. App. 816, 817 (2) (440 SE2d 15) (1994); *Black v. State*, 248 Ga. App. 626, 627 (2) (548 SE2d 9) (2001); *Carter v. State*, 237 Ga. App. 703, 710 (6) (516 SE2d 556) (1999).

prospective juror no. 10, Frankie Kirby, because of their strong feelings against drug use. We disagree.

(a) The decision whether to strike a juror for cause lies within the trial court's discretion and will only be disturbed upon an abuse of that discretion.[18]

> Before a juror can be disqualified for cause, it must be shown that an opinion held by the potential juror is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence or the court's charge upon the evidence.[19]

During voir dire, Davis explained that he has "zero tolerance" for drug use. Pitts' motion to excuse for cause was made on the basis that Davis' "zero tolerance" for drug use made him unable to judge a drug case. Similarly, Kirby testified on voir dire that she feels drugs "are wrong. Strong feeling against drugs."

Drug use, however, is illegal. That a prospective juror has "zero tolerance" for or "strong feelings" against an illegal activity is not grounds to strike for cause; nor does it render a prospective juror unable to sit in judgment. In that regard, what is prohibited is a personal view of an illegal activity which would make a prospective juror unable to listen to the facts before convicting — not a personal view of an illegal activity that would ensure conviction *if* the facts demonstrate commission of the illegal activity.

In this case, the record shows that neither Davis nor Kirby had prejudged the facts or Pitts. Any confusion came from inappropriate voir dire questions which, in the guise of inquiring about "impartiality," in reality asked Davis and Kirby to improperly judge the effect that evidence of drug use would have on them. The trial court rightly attempted to explain to the jurors the difference between a condemnation of drug use in general and an improper prejudgment of the facts of the case. After such explanation, Davis stated he would "attempt to be impartial," and Kirby stated that she would "try to be fair." Under the circumstances presented, we do not find the trial court abused its discretion in denying Pitts' motion to strike prospective jurors Davis and Kirby for cause.

(b) Because, as noted above, the trial court refused to permit Davis or Kirby to speculate on the facts of this case and, instead, inquired as to the jurors' ability to be fair and impartial, Pitts claims that the court engaged in an improper "rehabilitation" of the jurors in violation of the holding in *Walls v. Kim*, 250 Ga. App. 259 (549

---

[18] *Rocha v. State*, 248 Ga. App. 53 (1) (545 SE2d 173) (2001).
[19] (Citation and footnote omitted.) Id.

SE2d 797) (2001), aff'd in part and rev'd in part, *Kim v. Walls*, 275
Ga. 177 (563 SE2d 847) (2002). This contention lacks merit.

Since the decision in *Kim v. Walls*, supra, we see more and more
frequently this claim of error raised whenever a trial court inquires
about a juror's ability to be "fair and impartial." However, it has long
been the law that "the control of the voir dire examination is vested
in the sound legal discretion of the trial judge and will not be inter-
fered with by this court unless the record clearly shows an abuse of
that discretion."[20] It must be understood that the decision in *Kim v.
Walls* did not impair the trial court's longstanding authority to
ensure a fair and impartial jury. To the contrary. What *Kim* ulti-
mately prohibited was the curtailment of a plaintiff's voir dire which
demonstrated a personal relationship/bias between a prospective
juror and the defendant and, thereafter, the trial court's reliance on
its own, insufficient rehabilitative questions in rejecting this clear
evidence of bias.

> Because the trial court failed to allow plaintiff's counsel to
> develop competent evidence as to bias as required by stat-
> ute, and itself conducted only a cursory, inadequate rehabili-
> tation of the juror, we hold that the court abused its broad
> discretion in qualifying the juror.[21]

The factual situation in *Kim v. Walls* was distinct, and the holding
therein cannot be expanded to somehow undermine a trial court's
authority to control voir dire and properly inquire about a juror's
ability to be impartial.

> Nor do we in any way limit the extremely broad discretion of
> trial courts in deciding whether to exclude a juror for cause
> once an adequate inquiry has been conducted. We simply
> conclude that when voir dire questioning is curtailed as it
> was here, the process fails to achieve its purpose of ferreting
> out bias, and an abuse of discretion results.[22]

The instant case is not a case where the trial court curtailed voir dire
and summarily "rehabilitated" a prospective juror who had expressed
well-founded doubts about being able to serve impartially because of
a close relationship with one of the parties. Pitts' reliance on *Kim v.
Walls*, supra, is misplaced.

---

[20] (Citations and punctuation omitted.) *Chancey v. State*, 256 Ga. 415, 423-424 (3) (349
SE2d 717) (1986).
[21] *Kim v. Walls*, supra at 179.
[22] (Citation omitted.) Id.

6. We likewise find meritless Pitts' contention that the trial court erred in excusing for cause prospective juror no. 20, Eric Kolsrud. Contrary to the facts illustrated above, Kolsrud testified that he had been wrongly accused by law enforcement and that the police had "put me through a lot." Kolsrud specifically testified that his view of law enforcement made him *unable to listen to the facts* of the instant case, because "I have a tendency not to believe people in uniform at all." Accordingly, we find no abuse of the trial court's discretion in excusing Kolsrud for cause.

7. Next, Pitts contends the trial court erred in denying his motion for mistrial made when co-defendant Harmon's attorney elicited testimony from Harmon that allegedly injected Pitts' character into evidence. We find no error.

Harmon testified on direct examination that, sometime during the course of her boyfriend-girlfriend relationship with Pitts, "we got into a fight and he pushed me against the wall. And caused me to have torn ligaments." Pitts' attorney objected and moved for a mistrial on the basis of relevance. The trial court denied the motion and instructed Harmon's attorney to "move on . . . and get into a different area of questioning," which Harmon's attorney did. No further objection was registered, and Pitts' attorney neither renewed the motion for mistrial nor asked for further curative action.

> Where a defendant objects and moves for a mistrial during the examination of a witness, and the trial court denies the motion but takes some corrective action, if the defendant is dissatisfied with that action, he must renew the objection or motion; otherwise, the issue is waived. [Pitts'] silence after the trial court's purported corrective action amounts to a waiver.[23]

8. In his next two claims of error, Pitts challenges the trial court's conclusion on motion for new trial that he received effective assistance of counsel. He contends his attorney was constitutionally deficient for failing to properly object to certain testimony from co-defendant Harmon.

> To prevail on a claim of ineffective assistance of trial counsel, appellant must show counsel's performance was deficient and that the deficient performance prejudiced him to the point that a reasonable probability exists that, but for

---

[23] (Footnote omitted.) *Frazier v. State*, 247 Ga. App. 500, 501-502 (544 SE2d 198) (2001); accord *Braswell v. State*, 245 Ga. App. 602, 605-606 (6) (b) (538 SE2d 492) (2000); *Garrett v. State*, 184 Ga. App. 593, 594 (2) (362 SE2d 150) (1987).

counsel's errors, the outcome of the trial would have been different. A strong presumption exists that counsel's conduct falls within the broad range of professional conduct, and the trial court's determination with respect to effective assistance of counsel will be affirmed unless the trial court's findings are clearly erroneous.[24]

(a) The first instance of allegedly objectionable testimony is the same as that complained of in Division 7, supra, wherein co-defendant Harmon testified that Pitts and she "got into a fight and he pushed me against the wall. And caused me to have torn ligaments." Pitts' attorney objected and moved for a mistrial on the basis of relevance. In this claim of error, Pitts contends the objection and mistrial motion should have been made on the basis of improper character evidence.

In the context of an ineffective assistance of counsel claim, Pitts has the burden to show not only error, but prejudice. As applied here, Pitts must show that, had his attorney moved for a mistrial on the basis of "character," as opposed to "relevance," there is a reasonable probability that the trial court would have granted the motion. Before this Court, however, Pitts asserts only error and makes absolutely no showing — or even an argument — that the trial court would have granted a mistrial motion if "character" had been the basis therefor. Certainly, Harmon's testimony, itself, does not demand a mistrial as a matter of law on the basis of either "relevance" or "character."

> It is generally within the discretion of the trial judge to determine whether to grant a mistrial based on improper character evidence. In reviewing the trial court's decision, an appellate court may consider the nature of the statement, the other evidence in the case, and the court's and counsel's action in dealing with the impropriety. A trial court's discretion in granting or refusing to grant a mistrial should not be disturbed unless a mistrial is essential to the preservation of the right to a fair trial.[25]

In contemplating a motion for mistrial on the basis of "character," the trial court's determination would necessarily have taken into account that the drugs at issue were found in Pitts' car within

---

[24] (Citations omitted.) *Myers v. State*, 275 Ga. 709, 713 (4) (572 SE2d 606) (2002).

[25] (Citation, punctuation and footnotes omitted.) *Clemons v. State*, 257 Ga. App. 96, 105 (4) (574 SE2d 535) (2002); accord *Gardner v. State*, 273 Ga. 809, 812 (5) (546 SE2d 490) (2001).

his arm's reach; that the complained-of portion of Harmon's testimony was completely irrelevant as to the commission of the charged drug offenses, making it highly probable that such evidence would not contribute to the jury's verdict on such offenses; and that, following the motion for mistrial, the trial court instructed Harmon's attorney to "get into a different area of questioning," and Harmon's attorney did so. "Given the nature of [Harmon's] statements and the other evidence introduced at trial, the court was authorized to find that nothing which was introduced was so prejudicial as to require the declaration of a mistrial."[26]

As best we can discern, Pitts also contends under this same claim of error that his attorney was ineffective for failing to renew the motion for mistrial following the trial court's ruling, thereby preserving such for this Court's review. It is not clear from Pitts' allegations whether he claims that such renewal should have been made on the basis of "relevance" or "character," but, as mistrial was not demanded as a matter of law on either basis, this claim plainly lacks merit as a ground for ineffective assistance of counsel. Further, as mistrial was not required as a matter of law, we do not find it unreasonable that Pitts' trial attorney did not renew her motion because she "did not want to place any greater emphasis on her [(Harmon's)] testimony at that point, in the presence of the jury." This was a reasonable strategic decision that this Court will not second-guess, "[W]hile [Pitts] and his current counsel may disagree with this decision, it is one of strategy and does not support a claim of ineffective assistance of counsel. We will not judge counsel's trial strategy by hindsight or result."[27]

(b) The second instance of allegedly improper testimony also came during co-defendant Harmon's direct examination, as follows:

[Harmon's attorney:] Okay. All right. So, what — what did he [(Pitts)] do for a living?
[Harmon:] Nothing. Sold drugs.

Pitts' attorney immediately objected to such testimony, and the objection was sustained; the trial court instructed the jury to disregard the testimony and admonished the witness. Pitts now contends his trial attorney should have moved for mistrial on the basis of improper character evidence. We disagree.

---

[26] *Davis v. State*, 238 Ga. App. 736, 737 (3) (520 SE2d 475) (1999); see also *Woodham v. State*, 263 Ga. 580 (1) (b) (439 SE2d 471) (1993) (grant of a motion for mistrial may be required where the injury is so grave that no act of the court could remove the damaging effect).

[27] (Citation omitted.) *Gillison v. State*, 254 Ga. App. 232, 236 (4) (c) (561 SE2d 879) (2002).

Pitts was indicted, inter alia, for possession of cocaine with intent to distribute and trafficking in cocaine, 69.5 grams. Generally, "trafficking" is defined as, "Trading or dealing in certain goods and commonly used in connection with illegal narcotic sales."[28] An amount of cocaine sufficient to constitute the offense of trafficking, i.e., 28 grams or more, well exceeds a "user" amount of cocaine and implies that a defendant so charged "trafficks" or deals in cocaine.[29] This is why possession of cocaine with intent to distribute is a lesser included offense of trafficking.

> The "intent to distribute" which is necessary to the crime of possession of a substance under § 16-13-30 (b) is satisfied by the reasonable inference that a person who possesses more than the 28 grams of cocaine under § 16-13-31 [trafficking] intends to distribute it.[30]

Consequently, there was nothing objectionable about Harmon's testimony that, from February 1999 to August 1999, which time frame included the June 1999 incident date, Pitts "sold drugs" for a living. This was not evidence of Pitts' *general* bad character, a prior conviction, or a *specific* instance of misconduct.[31] Instead, Harmon's testimony that Pitts sold drugs during the time of the incident went to the gravamen of the charges against him and established both the motive for possession of the drugs located in his car — which issue was extremely relevant since each defendant blamed the other — as well as the element of the intent to distribute such drugs.[32] The admission of such relevant evidence is not limited to "good character" rebuttal only, as the dissent would have it.[33] Nor is evidence which is

---

[28] Black's Law Dictionary (5th ed.); see also *Guyton v. State*, 206 Ga. App. 145, 146 (3) (424 SE2d 87) (1992) (police target areas for investigation where people are "trafficking" drugs).

[29] See, e.g., *Stewart v. State*, 232 Ga. App. 565, 566 (1) (502 SE2d 502) (1998) (4.9 grams of cocaine is sale amount not personal use amount); *Bacon v. State*, 225 Ga. App. 326, 327 (483 SE2d 894) (1997) (9.8 grams of cocaine is distribution amount, and it is " 'extremely unusual for one person to have for his personal use' ").

[30] *Gilbert v. State*, 208 Ga. App. 258, 261 (1) (430 SE2d 391) (1993); see also *Bassett v. Lemacks*, 258 Ga. 367, 370 (2) (370 SE2d 146) (1988) ("the amount of controlled substance was chosen [by the legislature] as the basis for distinguishing the crime of trafficking from the somewhat less serious crimes").

[31] See OCGA § 24-9-20 (b).

[32] OCGA § 24-2-2 ("The general character of the parties and especially their conduct in other transactions are irrelevant matter[s] *unless the nature of the action involves such character* and renders necessary or proper the investigation of such conduct.") (emphasis supplied).

[33] See *Stafford v. State*, 275 Ga. 337, 338 (2) (566 SE2d 663) (2002) (testimony that defendant was upset because someone had stolen his marijuana plants admissible to show defendant's state of mind and to prove the marijuana charges); see also *Speed v. State*, 270 Ga. 688, 691 (8) (512 SE2d 896) (1999) (State's evidence of defendant's drug dealing admissi-

directly relevant to an issue in the case subject to a similar transaction Uniform Superior Court Rule 31.3 hearing.[34]

> Evidence is not inadmissible simply because it might incidentally reflect on the defendant's character. Any evidence establishing that a defendant has committed the crimes for which he is being tried will inevitably say something about his character. What is forbidden is the introduction . . . in the first instance of evidence whose *sole* relevance to the crime charged is that it tends to show that the defendant has bad character.[35]

"[T]he evidence to which [Pitts] objects in the instant case was not introduced merely to impugn his character, but was relevant to the central issue in the case of whether [Pitts] was involved in dealing drugs."[36] Since the testimony that, during the time of the incident, Pitts "sold drugs" was not legally objectionable on the basis of improper character evidence, the failure to object (or the making of an objection on grounds other than "character") cannot support a finding of ineffective assistance of counsel. Failure to make a meritless objection is not error.[37]

Further, testimony that Pitts purchased distribution amounts of cocaine was properly admitted by the trial court as res gestae of the charged offenses. In that regard, Harmon testified that just prior to being stopped by the patrol officer,

> [Harmon:] He [(Pitts)] stopped at the store. We both stopped at this store. He got out of the car. And met this guy. . . . He met this guy named Rick. And him and Rick exchanged — I can't — could I say it? He met Rick, him and Rick exchanged money, with drugs, okay. Orlando Pitts got back in the car and we left. . . . The rock cocaine, the little cookie that he had, he placed it on the floor beside my feet. . . . All of a sudden the police pulled us over. . . . Mr. Pitts took the

---

ble as motive for murder); accord *Johnson v. State*, 260 Ga. 457, 458 (2) (396 SE2d 888) (1990); *McGinnis v. State*, 258 Ga. 673, 674 (2) (372 SE2d 804) (1988); *Burney v. State*, 252 Ga. 25, 26 (2) (310 SE2d 899) (1984); *Kitchens v. State*, 235 Ga. App. 349, 352 (509 SE2d 391) (1998); *Higgins v. State*, 221 Ga. App. 335, 336 (2) (471 SE2d 275) (1996); *Brown v. State*, 197 Ga. App. 155 (398 SE2d 34) (1990).

[34] *Sterling v. State*, 267 Ga. 209, 211 (4) (477 SE2d 807) (1996); *Motes v. State*, 229 Ga. App. 489 (1) (494 SE2d 283) (1997).

[35] (Citation and punctuation omitted; emphasis in original and omitted.) *Frazier v. State*, 257 Ga. 690, 698 (16) (362 SE2d 351) (1987); *Harris v. State*, 260 Ga. 860, 865 (6) (401 SE2d 263) (1991).

[36] (Footnote omitted.) *Taylor v. State*, 254 Ga. App. 150, 153 (4) (561 SE2d 833) (2002).

[37] *Fults v. State*, 274 Ga. 82, 87 (7) (548 SE2d 315) (2001).

drugs out of his — what he had down in here in his pocket and he placed them in my lap and that's how the drugs get on me. I panicked. . . .

[Prosecutor:] Okay. And make sure I'm correct on this, you actually accompanied defendant Pitts to actually purchase the drugs [(69.5 grams of cocaine)] that were under the seat and on your person; is that correct?

[Harmon:] Yes, sir.

Accordingly, Harmon's earlier comment that Pitts "sold drugs" was simply cumulative of evidence properly admitted as res gestae that Pitts purchased distribution amounts of cocaine for, perforce, distribution purposes.[38] This fact, coupled with the trial court's instructions to the jury, twice, to disregard the complained-of "sold drugs" comment, is sufficient to permit the conclusion that there is no *reasonable* probability that — had the single "sold drugs" comment *not* been made — Pitts would have been acquitted.

9. Pitts' additional claims of ineffective assistance of counsel based on the failure to object to the errors alleged in Divisions 1, 5, and 6, supra, are rendered meritless by virtue of our substantive review of such errors and our findings in relation thereto.

10. Pitts' remaining claim of error asserts that the jury returned an "ambiguous verdict" by finding him guilty of both the greater offense of possession of marijuana with intent to distribute and the lesser included offense of possession of marijuana; thus, he argues that he should be given the "benefit of the ambiguity" and sentenced only on the lesser offense. This claim lacks merit. A finding of guilt on a greater offense necessitates a finding of guilt on a lesser included offense.[39] That a jury specifically finds a defendant guilty of both in its verdict form creates no ambiguity. "[I]t is proper to convict and sentence a defendant for that crime which includes all others."[40] Pitts was properly sentenced on the greater offense.

*Judgment affirmed. Smith, C. J., Andrews, P. J., Ruffin, P. J., and Adams, J., concur. Barnes and Ellington, JJ., dissent.*

ELLINGTON, Judge, dissenting.

I must respectfully dissent. In Division 8 (b), supra, the majority finds that Harmon's testimony that Pitts was unemployed and "sold drugs" for a living was admissible to prove the crimes as charged. I

---

[38] See *Ramey v. State*, 239 Ga. App. 620, 623 (2) (521 SE2d 663) (1999) (defendant failed to demonstrate how testimony would have affected the outcome of the trial when such testimony would have been cumulative of other evidence).

[39] *Carter v. State*, 269 Ga. 420, 423 (5) (499 SE2d 63) (1998).

[40] Id. at 424.

believe that the testimony was inadmissible bad character evidence, that counsel's failure to raise an appropriate objection or timely move for a mistrial constituted deficient performance, and that Pitts was prejudiced thereby. Accordingly, I would reverse his convictions based upon ineffective assistance of counsel and would remand this case for a new trial.

A thorough reading of the record shows that, during trial but outside the presence of the jury, the trial court prohibited the State and Pitts' co-defendant, Harmon, from introducing evidence of Pitts' criminal history.[41] Shortly thereafter, Harmon testified that Pitts had lived with her about four months immediately before the arrest. Harmon's counsel then asked, "So . . . what did [Pitts] do for a living [during this time]?" Harmon responded, "Nothing. Sold drugs."

Pitts' counsel objected "to this whole line of questioning." Counsel, however, did not object on the basis of improper character evidence, ask for curative instructions, or move for a mistrial. The witness then interjected, "That's the truth," and the trial court reprimanded her, saying, "Ma'am, we have discussed this earlier. I'm going to instruct the jury to disregard the last statement of the defendant, and I'm going to excuse [Harmon] to sit down if she can't abide by the rulings of court already stated." Harmon's counsel then changed his line of questioning. After Harmon rested, the parties gave closing arguments before the court recessed for the evening.

When court reconvened the next morning, Pitts' counsel moved for a mistrial based upon Harmon's statement that Pitts was unemployed and sold drugs for a living. Counsel stated that the testimony "came so quickly . . . that, frankly, I didn't leap to my feet." Counsel requested, in lieu of a mistrial, a curative instruction telling the jury to disregard the testimony. Counsel acknowledged that there was a risk the instruction would reemphasize the testimony. The court denied the motion for mistrial and instructed the jury that there was no evidence that Pitts sold drugs for a living and that they were to disregard Harmon's statement. Pitts' counsel did not renew the motion for mistrial following the curative instruction.[42]

As the majority recognizes, in order to prove ineffective assistance, Pitts has the burden on appeal of showing "both that his attorney's performance was deficient and that the deficiency prejudiced him such that a *reasonable probability* exists that, but for the attor-

---

[41] The State did not seek to admit any evidence of prior drug sales as similar transactions.

[42] Because counsel failed to object to the evidence on the basis that it was impermissible bad character evidence, to timely move for a mistrial, or to renew the motion for mistrial after the curative instruction, counsel failed to preserve this error for appellate review. *McCoy v. State*, 273 Ga. 568, 572 (8) (544 SE2d 709) (2001).

ney's errors, the outcome of his trial would have been different."
(Citations and punctuation omitted; emphasis supplied.) *Byrd v.
State*, 274 Ga. 58, 60 (2) (548 SE2d 2) (2001); see also *Strickland v.
Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). We
find Pitts has established that, under the circumstances of this case,
counsel's oversight constituted deficient performance. Evidence that
Pitts was unemployed and "sold drugs" for a living was inherently
prejudicial in a trial based upon charges that he trafficked cocaine
and possessed marijuana with the intent to distribute. Apparently
recognizing this, the trial court specifically excluded such evidence.
Within minutes of the court's ruling, however, the co-defendant
ignored the ruling and intentionally injected Pitts' alleged history as
a drug dealer into the trial. It was not a simple "passing reference" to
Pitts' past general criminal behavior, but referred specifically to the
type of behavior for which he was on trial. Cf. *Owens v. State*, 250 Ga.
App. 61, 62 (550 SE2d 464) (2001) (testifying officer made a "passing
reference" about the defendant's parole officer); *Holt v. State*, 248 Ga.
App. 334, 336 (2) (546 SE2d 83) (2001) (no abuse of discretion for
denial of mistrial following a comment that was unresponsive to the
question asked). We are unable to see any purpose for the testimony
other than as inadmissible evidence of Pitts' *propensity* to sell drugs.

Admission of this type of general bad character evidence is
severely restricted, because

> evidence of an independent offense or act committed by the
> accused is highly and inherently prejudicial, raising, as it
> does, an inference that an accused who acted in a certain
> manner on one occasion is likely to have acted in the same or
> in a similar manner on another occasion and thereby put-
> ting the accused's character in issue. An accused is . . . enti-
> tled to be tried for the offense charged in the indictment,
> independently of any other offense not connected with the
> transaction upon which the indictment was based.

(Citation omitted.) *Williams v. State*, 261 Ga. 640, 641-642 (2) (a)
(409 SE2d 649) (1991); see also OCGA § 24-2-2; *Gearin v. State*, 208
Ga. App. 878, 881 (2) (432 SE2d 818) (1993).

> In order to protect an accused and to insure him of a fair and
> impartial trial before an unbiased jury, we have long
> embraced the fundamental principle that the general char-
> acter of an accused is inadmissible unless the accused
> chooses to put his character in issue. As a corollary of this
> fundamental principle, we have also long adhered to the rule
> that where an accused is on trial for the commission of a

crime ·. . . proof of a distinct, independent, and separate offense is never admissible, unless there is some logical connection between the two, from which it can be said that proof of the one tends to establish the other.

(Citations omitted.) *Williams v. State*, 261 Ga. at 641 (2) (a); see also OCGA § 24-9-20 (b) (evidence of bad character or prior convictions are inadmissible unless the defendant first puts his character in issue); Uniform Superior Court Rule 31.3 (D) (accord); *Hancock v. State*, 210 Ga. App. 528, 529-530 (2) (437 SE2d 610) (1993) (accord).

Although the majority contends evidence that Pitts had a history of dealing drugs was admissible to show Pitts' "motive" and "intent" for possessing drugs on the day of his arrest, this contention lacks any support, as does its position that the testimony goes to the "gravamen" of the charges. Unless the defendant places his character in issue at trial, which did not happen in this case, similar bad acts of the accused that were not part of the res gestae of the crime charged can only be admitted if there is notice to the accused, the trial court conducts a hearing, and the party seeking to admit such evidence makes certain affirmative showings.[43] USCR 31.3 (B); *Williams v. State*, 261 Ga. at 642 (2) (b). In this case, no one attempted to admit evidence of a specific drug sale by Pitts as a similar transaction in this case, so the trial court heard none of the affirmative showings necessary for it to consider admitting Harmon's testimony. Further, prior bad acts evidence can only be admitted for specific, limited purposes at trial, and the trial court must instruct the jury of the limited purposes for which they may consider the evidence, something that did not happen in this case. *Williams v. State*, 261 Ga. at 642 (2) (b), n. 2. Finally, even if the trial court had conducted the required USCR 31.3 (B) hearing, it is obvious that a general allegation that Pitts "sold drugs," without any details as to·when and where this alleged drug dealing occurred, could not meet the admissibility requirements under *Williams v. State*, 261 Ga. at 642 (2) (b). Therefore, this is clearly inadmissible, general bad character evidence going only to Pitts' propensity to sell drugs.

In fact, the cases relied upon by the majority for its finding that the evidence was admissible to prove the crimes are clearly distinguishable from this case, since they either involved cases where the defendant took the stand in his own defense or presented other testi-

---

[43] These showings include (1) that the evidence is being introduced "not to raise an improper inference as to the accused's character, but for some appropriate purpose which has been deemed to be an exception to the general rule of inadmissibility"; (2) that there is sufficient evidence to establish that the accused committed the prior act; and (3) that there is sufficient connection or similarity between the independent act and the crime charged so that proof of the former tends to prove the latter. *Williams v. State*, 261 Ga. at 642 (2) (b).

mony of his good character, thereby making bad character evidence admissible for impeachment;[44] were decided before the Supreme Court of Georgia adopted the similar transaction admissibility requirements of *Williams v. State*, 261 Ga. at 642 (2) (b);[45] or involved separate criminal acts that were entirely different from the crimes for which the defendant was being tried, so that they were not "similar transactions" requiring a USCR 31.3 hearing.[46] In this case, Pitts did not testify at trial, presented no evidence regarding his character, and was being tried for drug trafficking, precisely the type of act referred to by Harmon's testimony that he "sold drugs" for a living. Accordingly, the majority's analysis is flawed.

Because I believe Harmon's testimony was clearly inadmissible bad character evidence that was introduced in direct violation of an express ruling by the trial court that prohibited such evidence, I would find that counsel's failure to preserve a proper objection or to timely move for a mistrial constituted deficient performance. *Mann v. State*, 252 Ga. App. 70, 72-73 (1) (555 SE2d 527) (2001) (failure to object or request a mistrial to clearly objectionable evidence constituted deficient performance). Counsel did not object on the basis of impermissible character evidence or even relevance. She simply objected "to this whole line of questioning." She later admitted that her failure to timely and properly object was not a tactical decision but simply a result of her failure to "leap to [her] feet" after Harmon's statement. Cf. *Rogers v. State*, 247 Ga. App. 219, 232 (18) (b) (543 SE2d 81) (2000) (counsel's trial strategies and tactics do not equate with deficient performance).

---

[44] See majority footnotes 35 and 36, citing *Harris v. State*, 260 Ga. 860, 865 (6) (401 SE2d 263) (1991) (evidence that defendant beat his wife was admissible to impeach his testimony that he was a gentle, loving man with a good relationship with his wife), and *Taylor v. State*, 254 Ga. App. 150, 153 (4) (561 SE2d 833) (2002) (after the defendant took the stand to testify to his own good character and to deny any recent involvement in the drug trade, evidence that the defendant recently associated with convicted drug dealers was admissible to prove that defendant was dealing drugs); see also USCR 31.3 (D).

[45] See majority footnote 35, citing *Frazier v. State*, 257 Ga. 690, 698-699 (16) (362 SE2d 351) (1987) (evidence of a similar crime occurring two months earlier admissible to show crime was not committed inadvertently, accidentally, involuntarily, or without guilty knowledge, given that defendant took the stand to minimize his involvement in the crimes), and *Harris v. State*, 260 Ga. at 865 (6).

[46] See cases cited in majority's footnotes 33 and 34, including *Stafford v. State*, 275 Ga. 337, 338 (2) (566 SE2d 663) (2002) (evidence that defendant possessed drugs was not a similar transaction in a murder case, and was part of the res gestae of the marijuana possession charges); *Speed v. State*, 270 Ga. 688, 691 (8) (512 SE2d 896) (1999) (evidence that defendant was a "drug dealer" was relevant to his motive in a murder case and was not a similar transaction); *Sterling v. State*, 267 Ga. 209, 211 (4) (477 SE2d 807) (1996) (evidence that defendant needed money for drugs was relevant to his motive in a murder case and was not a similar transaction that required a USCR 31.3 hearing); *Motes v. State*, 229 Ga. App. 489 (1) (494 SE2d 283) (1997) (evidence that defendant needed money for drugs was not a similar transaction in an armed robbery case).

As to the second prong of an ineffective assistance claim, that is, whether Pitts was prejudiced by counsel's deficient performance, the test is whether, absent counsel's mistake, there is a *reasonable probability* that the jury's verdict would have been different. *Byrd v. State*, 274 Ga. at 60 (2). In this case, both defendants attempted to win acquittal by demonstrating to the jury that the drugs belonged to the *other* defendant. The trial court's abbreviated jury instruction to disregard the evidence was insufficient to address the serious consequences of Harmon's testimony that Pitts "sold drugs." See *Anderson v. State*, 252 Ga. 103, 104 (312 SE2d 113) (1984) (conviction reversed when trial court failed to appropriately address an objection that officer's testimony constituted impermissible character evidence). In fact, given the highly prejudicial nature of the co-defendant's statement, it is unlikely that any curative instruction would have been sufficient to ensure that the jury did not consider the comment during their deliberations. See *Gearin v. State*, 208 Ga. App. at 881-882 (2);[47] cf. *Binns v. State*, 237 Ga. App. 719, 720 (2) (516 SE2d 583) (1999) (following officer's reference to defendant's previous drug sales, the trial court instructed the jury to disregard the statement and specifically asked the jurors if there was anyone who would be unable to do so); *Tidwell v. State*, 219 Ga. App. 233, 237 (4) (464 SE2d 834) (1995) (instruction sufficient to cure improper testimony that defendant was intoxicated). Further, contrary to the majority's position, a statement that Pitts "sold drugs" for a living over several months was *not* merely cumulative of his co-defendant's testimony that, *within minutes* before his arrest, Pitts purchased some cocaine. Therefore, we cannot say that the erroneous admission of the evidence was harmless. Cf. *Johnson v. State*, 191 Ga. App. 845-846 (1) (383 SE2d 346) (1989) (no harmful error when bad character evidence was merely cumulative).

I believe that Pitts has carried his burden of demonstrating prejudice by counsel's oversight and that, absent this oversight, there is at least a reasonable probability that Pitts would not have been convicted by this jury or, given the trial court's prior ruling that this prejudicial evidence was inadmissible, that the trial court would

---

[47] The general rule that a curative instruction will cure the error caused by having admitted evidence later ruled inadmissible is subject to exceptions when the illegal evidence has worked such harm or injury to the accused as to render it probable that the subsequent withdrawal did not heal the injury inflicted by its improper admission. Jurors, like other human beings, are unconsciously too much affected by strong mental impressions for these impressions to be nicely segregated from the mass of evidence by a mere direction that these impressions are to be obliterated, though they be told, even by the judge, that the object which created those impressions has been removed and is now out of their sight. (Citations and punctuation omitted.) *Gearin v. State*, 208 Ga. App. at 881-882 (2).

have granted a timely motion for mistrial. *King v. State*, 261 Ga. 534, 535-536 (2) (407 SE2d 733) (1991) (mistrial required when officer, immediately after being told not to mention defendant's previous jail term, testified that defendant had just been released from jail); *Gearin v. State*, 208 Ga. App. at 882 (2) (trial court erred in denying motion for mistrial after wrongful admission of evidence of other crimes); *Hancock v. State*, 210 Ga. App. at 529-530 (2) (finding admission of bad character evidence was harmful error as a matter of law); see also *Owens v. State*, 250 Ga. App. at 62 (evidence of bad character not sufficiently prejudicial to require a mistrial). Accordingly, I would reverse Pitts' convictions and remand for retrial.

I am authorized to state that Judge Barnes joins in this dissent.

DECIDED MARCH 26, 2003.

*Franklin & Hubbard, Brooks S. Franklin, Cynthia G. Morris*, for appellant.

*Paul L. Howard, Jr.*, District Attorney, *Amira A. Arshad*, Assistant District Attorney, for appellee.